THE STATE OF OHIO, APPELLANT, *v.* ESKRIDGE, APPELLEE.

[Cite as State *v.* Eskridge (1988), 38 Ohio St. 3d 56.]

(No. 87-1483—Submitted April 20, 1988—Decided July 20, 1988.)

*John T. Corrigan,* prosecuting attorney, and *DeLouis Broughton,* for appellant.

*Hyman Friedman,* county public defender, and *Robert M. Ingersoll,* for appellee.

MOYER, C.J. In this case, we consider the issue of whether there was substantial evidence presented at trial to prove that force or the threat of force was used in the commission of the rape. We hold that there was and, therefore, reverse the judgment of the court of appeals.

R.C. 2907.02, since amended (139 Ohio Laws, Part I, 523, 538), provided in part:

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"* * *

"(3) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(3) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(3) of this section shall be imprisoned for life."

"Force" is defined in R.C. 2901. 01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

At trial, the victim gave the following testimony:

"Q. * * * You tell me what happened to you?

"A. He took my panties, and did the nasty stuff.

"Q. [By the court:] What did he do?

"A. He took off my panties and kissed me on my lips, and my neck.

"* * *

"Q. [By assistant prosecutor Mr. Broughton:] * * * What happened?

"A. He took off my panties, and did the nasty stuff, and kissed me on my lips, and my neck.

"Mr. Broughton: Okay.

"The Court: He kissed her on the lips, and the neck.

"Q. [By the court:] He kiss you anywhere else? Did he touch you where you didn't want to be touched?

"A. (Nodding head.)

"Q. [By Mr. Broughton:] Where did he touch you?

"A. Down here (indicating).

"Q. And what happened down there, do you know?

"A. He put his thing in me.

"Q. He did what?

"A. He put his thing in me.

"* * *

"Q. * * * You tell the Judge there what happened?

"A. He took off my pants, and did the nasty stuff, and kissed me on my lips and my neck.

"Q. Okay. And who put your clothes back on?

"A. He did.

"Q. He put them back on for you? Okay. Did he hurt you in any way?

"A. (Nodding head.)

"Q. Do you know what I'm talking about? You are not sure, are you?

"A. (Nodding head.)

"Q. Did he hurt you in any way?

"A. (Nodding head.)

"Q. What did you see happen?

"A. [The victim then described the defendant's ejaculation.]"

The victim's mother testified to the following:

"Q. * * * Tell us — tell us about what Loreain says [sic] to you?

"A. Loreain says [sic] to me, 'mommy, my daddy did nasty things to me.' I said, what. She said, 'my father did the nasty.' * * *

"* * *

"When I got in the car, I said, Loreain, what did your father do to you. 'He took my panties off, and laid me on the bed, and did nasty things."

The victim's mother further testified that for several nights after the incident, the child cried in her sleep, and later was unwilling to go to her father's house.

Two pediatricians who examined the victim testified that the victim had a redness in her vaginal area. One of the doctors testified that the hymenal ring bordered on abnormal in diameter. However, neither physician could state with a reasonable degree of certainty that penetration had occurred on the date in question. The absence of such evidence, one physician observed, is common in sexual abuse cases.

While the record could have been more explicit on the amount of force involved, in light of all the circumstances, i.e., the child's testimony, the child's tender age, and the relationship of parental authority that defendant had with his four-year-old daughter, we find substantial evidence from which the trial court could have found beyond a reasonable doubt that Eskridge committed the act with force. "The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength." *State v. Labus* (1921), 102 Ohio St. 26, 38-39, 130 N.E. 161, 164. In the present case, the victim testified that Eskridge removed her panties and there was testimony that he laid her on the bed — both acts of compulsion and constraint that are independent of the act of rape. The victim's testimony also expressed her revulsion at her father's conduct. Further, we note the age difference and disparity in size between Eskridge, a twenty-eight-year-old man, and the victim, a four-year-old child. A four-year-old child cannot consent to sexual conduct. The victim here did not and could not have participated in the sexual conduct of her own free will.

Even the court of appeals admitted that force was involved. "* * * We recognize that the rape of a four-year-old is inevitably forcible, and that Eskridge's conviction under R.C. 2907.02(A)(3) and 2907.02(B) carries with it, under these facts, an implicit finding of some degree of force. We further believe that, given the parent-child relationship, an unspoken threat of force similarly pervades this scenario." The court of appeals, however, went on to conclude that "R.C. 2907.02(B) clearly requires an additional quantum of force or coercion." We do not read the statute as the court of appeals applied it. R.C. 2907.02(B) requires only that minimal force or threat of force be used in the commission of a rape. As noted above, Eskridge used at least minimal force in committing the rape against the victim.

We also recognize the coercion inherent in parental authority when a father sexually abuses his child. "* * * Force need not be overt and physically brutal, but can be subtle and psycho-

logical. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. *State* v. *Martin* (1946), 77 Ohio App. 553 [33 O.O. 364]; *State* v. *Wolfenberger* (1958), 106 Ohio App. 322 [7 O.O. 2d 73]. In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established." *State* v. *Fowler* (1985), 27 Ohio App. 3d 149, 154, 27 OBR 182, 187, 500 N.E. 2d 390, 395.

In *Fowler,* the defendant, the stepfather of the fourteen-year-old victim, challenged his conviction for rape by force or threat of force on the grounds, among several, that the use of force or threat of force had not been proven.

"* * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *State* v. *Etheridge* (1987), 319 N.C. 34, 47, 352 S.E. 2d 673, 681. In the present case, Eskridge was the victim's father and, at the time of the rape, was babysitting her. He therefore held a position of authority over her which did not require any explicit threats or displays of force.

A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, syllabus. Given the substantial evidence of force presented in this case, we reverse the judgment of the court of appeals and reinstate Eskridge's conviction.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.