The STATE of Ohio, Appellee

v.

RIFFLE, Appellant.

[Cite as *State v. Riffle* (1996), 110 Ohio App.3d 554.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17495.

Decided April 24, 1996.

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *Philip D. Bogdanoff,* Assistant Prosecuting Attorney, for appellee.

*Jeffrey D. Haupt,* for appellant.

SLABY, Judge.

Craig Allen Riffle appeals from his convictions for two counts of rape, two counts of attempted rape, and two counts of gross sexual imposition. We affirm.

This case concerns allegations of sexual abuse made by Autumn M., who was twelve years old at the time of trial. Autumn's parents divorced when she was very young, and she lived with her mother after the divorce. When Autumn was seven or eight years old, she and her mother began living with Riffle. Riffle and Autumn's mother eventually married. Autumn continued to live with her mother and Riffle until 1993, when she moved to southern Ohio to live with her father and stepmother. Since that time, Autumn has occasionally returned to Akron to visit her mother.

In January 1995, Autumn told her stepmother and father that Riffle had sexually abused her. According to Autumn, the abuse began in 1990 and continued during the time that she lived with her mother and Riffle. The last incident occurred during the summer of 1994, when Autumn was visiting her mother and Riffle.

Soon thereafter, an Akron police detective interviewed Riffle. According to the detective, who testified at trial, Riffle admitted to sexual activity with Autumn. Specifically, Riffle claimed that on two separate occasions, Autumn exposed herself, unzipped his pants, and masturbated him. He admitted touching Autumn's breasts on both occasions, but denied engaging or attempting to engage in any oral or vaginal sex with Autumn.

Riffle was arrested and charged with two counts of rape under R.C. 2907.02(A)(1)(b), two counts of attempted rape under R.C. 2907.02(A)(1)(b) and 2923.02, and two counts of gross sexual imposition under R.C. 2907.05(A)(4). The rape charges specified that Riffle compelled Autumn to submit by using force or the threat of force. He pleaded not guilty, and the case proceeded to a jury trial. At the conclusion of the trial, the jury found him guilty of all charges, and the trial court sentenced him.

Riffle appeals, assigning two errors.

Assignment of Error I

"[Riffle] was deprived of his right to effective assistance of counsel in violation of the Fifth and Sixth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

Riffle points to two specific incidents to support his argument that his trial counsel provided ineffective assistance. First, he claims that his attorney should have objected to allegedly inadmissible hearsay testimony from Autumn's therapist. Second, he argues that counsel should have moved for a mistrial after learning that the jury listened to part of a tape recording that had not been played in open court.

A defendant who raises a claim of ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. We presume that counsel's conduct falls within the range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 416–417. Counsel's trial tactics generally do not suffice to support an ineffective assistance claim. *State v. Carrion* (1992), 84 Ohio App.3d 27, 32, 616 N.E.2d 261, 264–265.

We reject Riffle's argument as it pertains to trial counsel's failure to object. The failure to object is not a *per se* indicator of ineffective assistance of counsel because counsel may refuse to object for tactical reasons. *State v. Gumm* (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253, 267. The failure of Riffle's

trial counsel to object to the allegedly inadmissible testimony from Autumn's therapist, therefore, did not equate to ineffective assistance.

Riffle's second argument in this assignment of error concerns an audiotape that the state introduced at trial. At trial, the state played a portion of this tape, on which a telephone call was recorded. During the call, Autumn's father spoke first with Autumn's mother, then with Riffle. Only the conversation between Autumn's father and Riffle was played in the courtroom. In the jury room, however, the jury played the tape and heard not only that conversation, but also the conversation between Autumn's parents. Riffle contends that his trial counsel should have moved for a mistrial because the jury heard the extraneous material.

We cannot say that Riffle was prejudiced by trial counsel's failure to move for a mistrial. The transcript shows that Riffle's counsel considered the option, but decided against it:

"Your Honor, I discussed the contents of what's on that tape up to the point where the defendant, my client, makes admissions which were played or makes a statement which was played in front of the jury. I have gone over the basic contents of that.

"I have gone over Mr. Riffle's—not his rights, but his options, myself asking for a mistrial.

"We have consulted and it would not be my intent at this time to ask for a mistrial."

Such a tactical decision was well within the range of competent assistance. Further, the trial court instructed the jury to disregard any part of the tape that was not played in open court. Because juries are presumed to have followed the court's instructions, *State v. Johnson* (1994), 71 Ohio St.3d 332, 340, 643 N.E.2d 1098, 1105–1106, the instruction cured any error arising from the jury's playing of the tape.

Riffle's first assignment of error is overruled.

Assignment of Error II

"The jury verdict finding [Riffle] guilty of rape, attempted rape and gross sexual imposition was against the manifest weight of the evidence in violation of the Due Process Clause of the United States Constitution and Article I, Section 16 of the Ohio Constitution."

Riffle contends that his convictions were against the manifest weight of the evidence because (1) the statement taken from Autumn by the investigating deputy did not contain material facts that Autumn later testified to in court; (2) the state did not provide any corroborating medical testimony; (3) Autumn's

testimony was suspect because of an underlying motive to reunite her parents by destroying their new marriages; and (4) no evidence was presented regarding the use of force or threat of force.

This court has repeatedly stated the manifest weight standard of review as follows:

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010.

■ While we must consider the credibility of witnesses, assessments of credibility are primarily for the trier of fact. *State v. Loza* (1994), 71 Ohio St.3d 61, 69, 641 N.E.2d 1082, 1096.

R.C. 2907.02 states:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies:

" * * * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

R.C. 2907.01(A) defines "sexual conduct" to include vaginal intercourse and cunnilingus. Under R.C. 2907.02(B), a violator of R.C. 2907.02(A)(1)(b) who purposely compels the victim to submit by force or threat of force receives life imprisonment. Riffle was also convicted of two counts of attempted rape under R.C. 2907.02(A)(1)(b) and 2923.02(A), which prohibits a person from purposely or knowingly engaging in conduct which, if successful, would constitute or result in an offense. As for gross sexual imposition, R.C. 2907.05(A)(4) states that no person shall have sexual contact with another who is not the person's spouse and is under thirteen years of age. R.C. 2907.01(B) defines "sexual contact" as any touching of an erogenous zone of another person, including a female's breast.

■ Given these statutory standards, the jury did not clearly lose its way by finding Riffle guilty of the crimes charged. Autumn testified that beginning in 1990, when she was eight years old, Riffle repeatedly engaged in sexual activity with her. According to Autumn, the incidents followed a similar pattern. Riffle ordered Autumn to undress and get into bed, then tried to insert his penis into Autumn's vagina; however, he never succeeded in achieving penetration. Autumn testified that Riffle put his tongue in her vagina and squeezed and sucked

on her breasts. She stated that the abuse happened "more than 20" times over the years, with the last incident occurring during the summer of 1994. She also said that the incidents occurred when her mother was at work. The state also called Autumn's father, stepmother, and therapist, all of whom testified regarding Autumn's recollections.

Most of Riffle's specific arguments can be dismissed with little comment. Although he argues that the state did not corroborate Autumn's testimony with any medical testimony, we have expressly held that such evidence is not required to sustain a rape conviction. *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88, 89–90. It is true that the deputy who interviewed Autumn referred only to the abuse occurring in the summer of 1994, and not to any abuse in prior years, in his report. At trial, however, the deputy testified that Autumn had told him about the abuse occurring in the previous years. Finally, Autumn's testimony was not unreliable merely because she testified that she had wanted her natural parents to be reunited.

Riffle's final argument, regarding the use of force or threat of force, warrants extended discussion. He notes that Autumn testified that Riffle never hurt her and never threatened to hurt her. Therefore, he argues that he cannot be found to have compelled Autumn to submit by force or the threat of force.

R.C. 2901.01(A) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The amount of force necessary to commit rape is not fixed; it depends on the parties' age, size, strength, and relation to each other. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph one of the syllabus; *State v. Labus* (1921), 102 Ohio St. 26, 38–39, 130 N.E. 161, 164. In *Eskridge,* the Ohio Supreme Court found that the defendant, an adult male, had used force in raping his four-year-old daughter. Quoting *North Carolina v. Etheridge* (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681, the court stated:

" '* * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.' " *Eskridge,* 38 Ohio St.3d at 59, 526 N.E.2d at 306.

It then concluded that the defendant "held a position of authority over [the victim] which did not require any explicit threats or displays of force." *Id.*

In *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, the court refused to extend *Eskridge* to a situation in which the defendant allegedly sexually

abused his adult daughter. The court recognized *Eskridge*'s continuing vitality in cases involving young children:

"*State v. Eskridge* is based solely on the recognition of the amount of control that parents have over their children, particularly young children. Every detail of a child's life is controlled by a parent, and a four-year-old child knows that disobedience will be punished, whether by corporal punishment or an alternative form of discipline. Because of the child's dependence on his or her parents, a child of tender years has *no real power to resist his or her parent's command,* and every command contains an implicit threat of punishment for failure to obey. Under these circumstances, a minimal degree of force will satisfy the elements of forcible rape." (Citation omitted.) *Id.* at 55, 600 N.E.2d at 665.

In contrast to the defendants in *Eskridge* and *Schaim,* Riffle was not the victim's natural father. He did have a position of authority over Autumn by virtue of his live-in relationship, eventually culminating in marriage, with Autumn's mother. We must then ask: Is the relaxed standard for showing force, as stated in *Eskridge* and recognized in *Schaim,* applicable if the defendant holds a position of parental authority over the victim, but is not the victim's natural parent?

The Eighth District Court of Appeals addressed a similar question in *State v. Kennedy* (June 21, 1990), Cuyahoga App. No. 57147, unreported, 1990 WL 84286. The defendant in *Kennedy* was unrelated to the victim, but had lived with the victim's aunt for several years. The court found that the defendant's position of authority, derived from his status as the longtime companion of the victim's aunt, "created a situation in which it was unnecessary for defendant to use brutal force to effect his purpose." *Id.* Under this formulation, the court determined that the defendant was guilty of forcible rape.

We agree that *Eskridge*'s standard extends to situations in which the defendant is not the natural parent of the child victim, but stands in a position of authority over the child. Under this standard, force need not be proved by physical compulsion or harm. Instead, "subtle and psychological" forms of coercion will suffice to show force. See *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182, 186–187, 500 N.E.2d 390, 395.

Especially because the *Eskridge* standard applies, we find that the jury did not act contrary to the manifest weight of the evidence by concluding that Riffle used force or the threat of force against Autumn. Autumn testified that Riffle ordered her to take her clothes off and get into bed. She asked him why, but Riffle "just told me to do what he said." Riffle then lay on top of her. Autumn tried to squirm away, but she was not strong enough to escape. Autumn told Riffle that she "hurt" and asked him to stop, but he refused. Riffle provided *no evidence* in

response to Autumn's testimony. We cannot say that the jury clearly lost its way by finding that Riffle caused Autumn to submit by force or the threat of force.

Riffle's second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.