OPINION
Appellant, Juan Sanchez, Jr., appeals his conviction in the Ashtabula County Court of Common Pleas on two counts of rape, in violation of R.C. 2907.02. For the reasons that follow, we affirm appellant's conviction, but reverse and remand the case for resentencing.
The following facts are relevant to a determination of this appeal. On Thanksgiving Day, 1996, the victim, then age twelve, spent the night at the apartment of her aunt and uncle, Crystal and Robert, in Geneva Township, Ohio. Also present in the apartment were the victim's other aunt, Cassandra, and Cassandra's fiancé, Juan Sanchez, Jr., appellant in this case.
The victim's two aunts, Cassandra and Crystal, fell asleep on a sofa bed while the victim, Robert, and appellant played cards into the early morning hours. Finally, at approximately 3:00 a.m., the victim went to sleep on the sofa bed next to her two aunts. Appellant and Robert retired to the bedroom to sleep.
At this point, the events that occurred are disputed by the parties. The story offered by the victim was that she was awakened at approximately 5:10 a.m. to find appellant at her side. She claimed that she was too afraid to say anything so she laid on the sofa bed quietly while appellant pulled her pants down. Next, appellant proceeded to insert his finger into her vagina. He then "licked" her vagina and then she felt "something else" inside of her. Appellant then wiped the victim's vaginal area with a tissue before leaving for the bathroom.
After appellant returned to his bedroom, the victim woke up her Aunt Cassandra and explained to her what appellant had done. Cassandra then woke appellant to confront him about the victim's allegations.
It is appellant's contention that after he went to sleep, the next thing that happened was his fiancé waking him up with allegations of sexual misconduct. He continues to deny those allegations. However, after appellant was awakened he and Cassandra left the apartment and went to his mother's house. Because appellant appeared to be upset, his mother gave him three 50 milligram tablets of her prescription of trazodone, an anti-depressant that she used to help her sleep. After appellant took the medication, he went to sleep.
At approximately 1:00 p.m. that same day, appellant was awakened by his sister who advised him that Ashtabula County Sheriff's Deputy Joseph DeFazio was in the house and wanted to speak to him. Appellant met with Deputy DeFazio and gave him a written statement after being given his Miranda Rights. In the statement, appellant admitted to having had sexual contact with the victim at approximately 5:00 a.m. Specifically, he stated that he "fondled her vagina by sticking up fingers inside her." He also stated, "I believe I licked her vagina." There was no admission of penile penetration. After completing his statement, appellant was arrested.
On February 4, 1997, appellant was indicted by the Ashtabula County Grand Jury on three counts of rape, in violation of R.C.2907.02(A)(1)(b). The first count was based upon vaginal intercourse; the second count on cunnilingus; and the third count on digital penetration. Appellant was arraigned on these charges on February 10, 1997, at which time he pleaded not guilty to all counts.
On February 27, 1997, appellant filed a motion to suppress all oral and written statements he had made claiming that at the time he gave the statements he was "under the influence of prescription drugs and did not know what he was saying or writing due to the influence of drugs." A hearing was conducted by the trial court on appellant's motion to suppress and, on October 22, 1997, the motion was overruled.
The matter proceeded to a jury trial commencing on October 29, 1997, and lasted three days. On October 31, 1997, the jury returned its verdict finding appellant not guilty on the first count, but guilty of the second and third counts. The trial court entered judgment on the verdict on November 3, 1997. On December 29, 1997, appellant was sentenced to an indefinite term of life imprisonment on each of the two counts, to be served concurrently.
Appellant timely filed a notice of appeal and now asserts the following assignments of error:
 "1. When the totality of the circumstances surrounding defendant's November 29, 1996 statement are reviewed, defendant's statement was not voluntary and violated defendant's rights under the Fifth Amendment to the United States Constitution and the trial court erred in overruling defendant's motion to suppress.
 "2. There is no evidence of force or the threat of force being used by defendant on Amber Thomas and the state, therefore, failed to prove one of the essential elements required by Ohio Revised Code Section 2907.02.
 "3. Although defendant was charged with three counts of rape, defendant's alleged actions arose from the same conduct with a single animus that should have been considered one crime or three crimes of similar import and the trial court erred in not merging the three counts.
 "4. The testimony of Deputy DeFazio was improper and prejudicial to defendant when Deputy DeFazio testified in the presence of the jury concerning defendant's prior juvenile record. This testimony was so prejudicial to defendant that it required the granting of defendant's request for a mistrial.
 "5. Juror number 3 Margaret Hood should have been discharged from jury service upon her informing the court that she was a personal friend with Corporal Ron Davis who was a key prosecution witness in rebuttal to defendant's case in chief when Ms. Hood failed to disclose her relationship with Corporal Davis during voir dire.
 "6. Defendant was denied the effective assistance of counsel."
In the first assignment of error, appellant contends that the trial court erred in overruling his motion to suppress because the statement he gave to Deputy DeFazio was not voluntary but, rather, the result of the prescription medication that his mother had given him.
The test to determine whether a statement was made voluntarily is a totality-of-circumstances standard. State v. Dennis (1997),79 Ohio St.3d 421, 425; citing State v. Clark (1988), 38 Ohio St.3d 252,261; see, also, Haynes v. Washington (1963),373 U.S. 503. The weighing of the evidence and the credibility of the witnesses during proceedings on a motion to suppress are to be determined by the trial court. State v. Smith (1991), 61 Ohio St.3d 284,288. Absent an error of law, an appellate court should not disturb a trial court's decision on a suppression motion where substantial evidence supports the trial court's ruling. Maumee v.Johnson (1993), 90 Ohio App.3d 169, 171.
In State v. Stewart (1991), 75 Ohio App.3d 141, this court held that "`[t]he presence of alcohol will not, by itself, make a statement per se inadmissible.'" Id. at 147 citing State v.Daniel (Dec. 31, 1990), Trumbull App. No. 89-T-4214, unreported, at 26. Additionally, "`while the presence of drugs or alcohol should be considered, the amount must sufficiently impair the confessor's abilities to reason.'" Id. citing Daniel, at 26.
In the case at bar, Deputy DeFazio testified that at the time appellant gave his statement, he appeared alert and was very cooperative. He did not appear groggy or under the influence of alcohol or other drugs, and his words were not slurred. In short, there was no indication by Deputy DeFazio that appellant's statement was anything less than voluntarily given.
Based upon the foregoing analysis, the trial court did not err in overruling appellant's motion to suppress. Accordingly, appellant's first assignment of error is without merit.
In the second assignment of error, appellant asserts that there was no evidence to support the finding that force or the threat of force was used as required for a rape conviction under R.C.2907.02. Accordingly, the trial court should have dismissed the charges against appellant.
Appellant relies on R.C. 2907.02(A)(2) which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." However, appellant was not charged or convicted of violating R.C. 2907.02(A)(2) but, instead, R.C.2907.02(A)(1)(b) which prohibits sexual conduct with another who is not the spouse of the offender when the victim is less than thirteen years of age, regardless of the offender's knowledge of the victim's age. As this court has previously held, force is not an element of the crime of rape pursuant to R.C. 2907.02(A)(1)(b) since "[t]he plain language of the statute allows for a conviction for rape of a minor under the age of thirteen without proof of force." State v. Payton (1997), 119 Ohio App.3d 694, 701. Thus, in this regard, appellant's second assignment of error is without merit.
However, the more compelling issue, which appellant fails to raise, is whether his life sentence was appropriate. Although a person can be convicted of rape without proof of force or threat of force, pursuant to R.C. 2907.02(B) a person who is guilty of statutory rape under division (A)(1)(b) can only be given a life sentence if the offender compelled the victim to submit by force or threat of force. Thus, the issue of force is pertinent in the case sub judice, but only as it relates to the sentence-enhancing provisions.
"Force" is defined by R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Eskridge (1988), 38 Ohio St.3d 56, the Supreme Court of Ohio elaborated upon this definition with respect to children:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." Id. at paragraph one of the syllabus.
In Payton, 119 Ohio App.3d at 702-703, this court addressedEskridge and the issue of force in a statutory rape situation. We stated:
 "The Eskridge court found the most important factor in this determination to be the relationship between the defendant and the victim — the parent-child relationship, stating, `[W]e are confronted with a child being told to do something by an important figure of authority * * *. [W]e find nothing unreasonable about a finding that the child's will was overcome.' Id. at 59, 526 N.E.2d at 306. In sum, because of the nature of the relationship, when the perpetrator's relationship to the accused is parent-child, force can be found `on the slightest of physical or verbal acts, such as removing the child's clothes, ordering the child to permit sexual activity, or instructing the child to keep it secret.' State v. Dye (Mar. 12, 1997), Summit App. No. 17763, unreported, at 11, 1997 WL 119563.
 "The relaxed standard for showing force presented in Eskridge has also been applied to relationships other than parent-child. State v. Riffle (1996), 110 Ohio App.3d 554, 674 N.E.2d 1214 (force found when live-in boyfriend of mother ordered victim to take her clothes off and get in bed and when victim tried to squirm away); State v. Gordon (Apr. 6, 1994), Greene App. No. 92 CA 127, unreported, 1994 WL 116171 (force found when stepparent residing in the same home held eleven-year-old, developmentally handicapped victim's head down while requiring him to perform fellatio); State v. Cornell
(Nov. 27, 1991), Cuyahoga App. No. 59365, unreported, 1991 WL 251667 (force found when landlord picked up nine-year-old victim, laid him on a bed, asked victim to take off his clothes, and performed fellatio).
 "We have held, however, that the relaxed standard announced in Eskridge should be limited to relationships involving the parent, stepparent or adoptive parent of the victim. State v. Waites (Aug. 19, 1994), Lake App. No. 93-L-009, unreported, at 12, 1994 WL 590289. Accordingly, when faced with a relationship other than a parent-child or a like relationship, more should be required to find force than with the parent-child relationship, due to the absence of implicit threat of punishment for disobedience."
 Thus, this court has previously made it clear that the exception set forth in Eskridge is only applicable in relationships involving the parent, stepparent, or adoptive parent of the victim. In the present case, the offender was the fiancé of the victim's aunt. While it is clear that appellant had a certain relationship with the victim, it was not that of parent, stepparent, or adoptive parent. Accordingly, pursuant to this court's previous opinions in Payton and Waites, the statutory standard for force must be used in place of the exception espoused in Eskridge as that exception does not apply to the facts here.
In the instant cause, other than the sexual acts themselves, the only thing appellant did to the victim was pull down her pants. This was even less than the defendant did in Payton where the defendant moved his victim onto a couch and took off her pajama bottoms before performing a sexual act. In concluding inPayton that there was not a sufficient showing of force to support a life sentence in that case, we stated:
 "Although these acts might be sufficient for a finding of force when a parent is involved, they are not sufficient in this case. No other evidence was presented that might have indicated the use or threatened use of force by appellant. There was no evidence that appellant ever threatened to harm or otherwise coerced [the victim]. [The victim] testified that appellant merely removed her clothes and performed the act." Id. at 703.
 Based upon the same reasoning, we conclude that appellant's actions were not sufficient to support a finding of force to support a life sentence. Accordingly, this case must be remanded for a new sentencing hearing.
In the third assignment of error, appellant maintains that the trial court erred in not merging the three counts of rape into one since the actions arose from the same conduct with a single animus. R.C. 2941.25 governs this issue. It provides:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them"
In order to determine whether merger was appropriate under R.C. 2941.25, a court must engage a two-step analysis. In State v. Blankenship (1988), 38 Ohio St.3d 116, the Supreme Court of Ohio stated:
 "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." Id. at 117.
 Applying the Blankenship holding to the crimes with which appellant was charged, it is clear that the elements of the offenses do not correspond to such a degree that the commission of one crime will result in the commission of another. In a case directly on point, the Supreme Court of Ohio held that the distinct elements of oral and vaginal rape do not "correspond to such a degree that the commission of one crime will result in the commission of the other" since the commission of oral rape does not constitute the commission of vaginal rape and vice versa. State v. Nicholas (1993), 66 Ohio St.3d 431, 435. Similarly, the distinct elements of oral rape and digital rape do not correspond to such a degree that the commission of one will automatically result in the commission of the other.
Moreover, even if the first step of Blankenship had been satisfied, it is clear that the second step would prohibit the conclusion that merger was appropriate. In Nicholas, the court held that "[a]ppellee was charged with three separate crimes involving distinct sexual activity; vaginal intercourse, cunnilingus, and digital penetration * * *. Since each constitutes a separate crime with a separate animus, they do not constitute allied offenses of similar import." Id. at 435. The same analysis is applicable to the present case.
Accordingly, appellant's third assignment of error is without merit as the trial court properly refused to merge the three counts into one.
In the fourth assignment of error, appellant submits that the trial court abused its discretion in not granting a mistrial due to the testimony of Deputy Joseph DeFazio.
A review of the trial transcript reveals that during the direct examination of Deputy DeFazio, he was explaining what happened when he went to talk to appellant in the afternoon following the incident. The following exchange occurred:
 "Q. When you were questioning him, how did he appear to you?
"A. Alert and awake.
 "Q. Did he appear to understand what you were asking him?
 "A. Yes, he did. When I read him his rights, he indicated that he understood them because he had been arrested before as a juvenile.
"MR. PERDUE: Objection.
 "THE COURT: The objection is sustained. I'm going to strike the last portion of that answer and the jury is instructed to disregard it."
It is appellant's contention that the preceding excerpt warranted a mistrial pursuant to Evid.R. 609(D) and R.C.2151.358. We disagree. A jury is presumed to follow the trial judge's instructions. State v. Loza (1994), 71 Ohio St.3d 61,75, citing State v. Henderson (1988), 39 Ohio St.3d 24,33. In light of the trial court's clear instruction to disregard that portion of Deputy DeFazio's response regarding appellant's juvenile arrest, we cannot conclude that a mistrial was warranted. Additionally, although not raised by appellant, we note that the mere mention of appellant's arrest was improper under Evid.R. 404(B). However, it is clear that this error was harmless in the context of this case. Thus, appellant's fourth assignment of error is without merit.
In the fifth assignment of error, appellant contends that the trial court erred in not discharging juror number three, Margaret Hood, once she informed the court that she was a personal friend of Corporal Ron Davis, a prosecution rebuttal witness.
It is apparent from the record that after the state called Corporal Davis as a rebuttal witness, one of the jurors, Margaret Hood approached the court bailiff and informed her that she was personal friends with that witness. At that point, the trial court judge met with Ms. Hood and counsel for both sides in chambers to discuss the situation. The trial judge specifically questioned Ms. Hood as to whether her relationship with Corporal Davis would influence her judgment in the case. She stated unequivocally that it would not. She was also asked whether she would give more weight to his testimony than any other witness, and she responded in the negative. Thereafter, the trial court denied appellant's motion to remove Ms. Hood from the jury panel.
It is appellant's claim that the denial of his motion to have this juror removed compromised his right to a fair and impartial jury. We disagree. It is clear that there were no grounds to have Ms. Hood excused for cause since there were no indications that she would not be fair and impartial. R.C. 2945.25(B). The fact that a juror is acquainted with a witness does not, in and of itself, affect the juror's ability to remain impartial. State v.Woodards (1966), 6 Ohio St.2d 14, 22. In the present case, Ms. Hood demonstrated to the trial court that she was willing and capable of remaining impartial during jury deliberations despite her acquaintance with Corporal Davis. Consequently, the trial court did not err by overruling appellant's motion to have her removed from the jury. Appellant's fifth assignment of error is without merit.
In the sixth assignment of error, appellant asserts that he was denied the effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must meet the two-part test set forth by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, "[t]he defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
The Supreme Court of Ohio adopted the Strickland test in Statev. Smith (1985), 17 Ohio St.3d 98, 100, and further held that a properly licensed attorney is "presumed" to be competent. Judicial scrutiny of counsel's performance is highly deferential as courts are reluctant to second guess challenged decisions that might be considered sound trial strategy. Strickland at 689;State v. Carter (1995), 72 Ohio St.3d 545, 558.
In the present case, appellant points to three specific areas where his trial counsel was deficient. First, appellant alleges that his counsel should have moved for a dismissal pursuant to Crim.R. 29 following the close of the state's case. A review of the trial transcript reveals, however, that defense counsel did, in fact, make a Crim.R. 29 motion although he did not reference the rule itself. It is clear, nonetheless, that the trial court treated it as a Crim.R. 29 motion. Therefore, this argument is meritless.
Next, appellant claims that his trial counsel's performance was deficient in that counsel should have performed redirect examination of appellant following cross-examination by the state. Appellant, however, has failed to show how that decision fell below an objective standard of reasonableness. In our opinion, this decision fell under the umbrella of trial strategy and, therefore, we are reluctant to second-guess trial counsel's decision.
Finally, appellant argues that his defense counsel failed to adequately explain the potential life sentence involved in the charges. Clearly, this court has no means of ascertaining what was or what was not told to appellant by his counsel regarding potential sentences. Hence, appellant has failed to establish ineffective assistance of counsel in this regard.
Based upon the foregoing analysis, appellant's sixth assignment of error is without merit.
The judgment of the trial court is affirmed with respect to appellant's convictions, however, the sentence imposed by the trial court is reversed. This case is remanded for a new sentencing hearing in accordance with our analysis of appellant's second assignment of error.
CHRISTLEY, P.J., and NADER, J., concur.