JOURNAL ENTRY AND OPINION
Larry Dyson appeals from a judgment of conviction entered by the common pleas court pursuant to jury verdicts finding him guilty of ten counts of rape of a child under the age of 13 with force, four counts of disseminating material obscene to juveniles, and five counts of gross sexual imposition of a child under the age of 13; the jury also determined him to be a sexually violent predator. On appeal, Dyson avers that the court erred in its instruction to the jury concerning force; that he did not receive effective assistance of counsel because his lawyers acquiesced in the jury instruction concerning force; and that his conviction for disseminating obscene material to a juvenile is not supported by sufficient evidence.
After reviewing these contentions, we have concluded they are not well taken and therefore, we affirm these convictions.
The record before us reveals that sometime during 1992 or 1993, Nadine Jackson and her daughter, Alecia Miller, a second grade student in the Cleveland school system, moved into Larry Dyson's apartment in Euclid, Ohio. At that time, Jackson and Dyson slept in the bedroom and Alecia slept on a couch in the living room. Dyson drove Alecia to and from school on a daily basis for the five years they lived with him, and Alecia called him "Daddy."
Dyson then began a practice once or twice a week of calling Alecia into his bedroom, telling her to remove her clothes and sit on him as he put on a condom and rubbed his penis on her vagina. While he engaged in this behavior with her, he played videotapes on a VCR which depicted various acts of intercourse. He would then caution her not to tell anyone about this activity because if he went to jail, she and her mother would have no place to stay.
When she turned twelve years old, Dyson first inserted his penis into her vagina, and then continued to do so. On these occasions, he would rinse out the condom, wrap it in clear wrap, and put it in a zippered compartment of a shoe brush in his dresser drawer. He repeated this behavior more than ten times according to Alecia.
In July 1997, after having sex with Alecia, Dyson drove her to the home of her sister, Bonita Marchmon. Alecia told Bonita about the occurrences, and Bonita took her to the Euclid Police Department.
Upon investigation, police obtained a search warrant, arrested Dyson, searched his premises, recovered the shoe brush and videotapes, and the grand jury returned a 50-count indictment against him, ten for rape of a child under the age of 13; 25 for disseminating obscene material to a juvenile; and 15 for gross sexual imposition.
The court commenced trial on May 4, 1998. At the close of the state's case, the court dismissed counts 15 through 33 and 41 through 50 and the state voluntarily dismissed counts 34 and 35. Thereafter, the jury returned its verdicts finding Dyson guilty of ten counts of rape, four counts of disseminating obscene material to a juvenile, five counts of gross sexual imposition, and it then determined him to be sexually violent offender. The court then sentenced Dyson to ten consecutive life sentences without parole plus 31 years.
Dyson now appeals and raises three assignments of error for our review. We shall jointly consider the first and the second.
I.
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THAT A LESSER DEMONSTRATION OF FORCE WAS REQUIRED WHEN THE RELATIONSHIP BETWEEN VICTIM AND DEFENDANT WAS ONE OF CHILD AND ADULT OR AUTHORITY FIGURE.
II.
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL ACQUIESCED IN A JURY INSTRUCTION PROVIDING FOR AN INCORRECT, LESSER REQUIREMENT OF FORCE WHERE THE RELATIONSHIP BETWEEN THE VICTIM AND DEFENDANT WAS ONE OF CHILD AND ADULT OR AUTHORITY FIGURE.
Dyson argues that the trial court committed plain error in instructing the jury concerning the use of force in connection with the rape charges, and that he has been denied effective assistance of counsel because his trial counsel acquiesced to that instruction. The state urges that the court's charge conformed to the Ohio Jury Instructions and did not result in error.
Thus, we concern ourselves with the court's instruction and whether the trial court committed plain error and whether Dyson received effective assistance of counsel.
Initially we recognize that plain error has previously been defined by this court in State v. Stover (1982), 8 Ohio App.3d 179
at paragraph three of the syllabus:
 Under Crim.R. 52(B) a "plain error" committed by a trial court is an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings.
Here, Dyson claims that because no physical force or threat of physical force was used here, but rather only subtle or psychological threats primarily coercing compliance by causing Alecia to believe she and her mother would have no place to stay, the court erroneously charged the jury concerning an authority figure relationship and the child, not an adult and a child relationship.
Force is defined in R.C. 2901.01 as follows:
 "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
Further in 4 O.J.I. 507.02, the following is based on State v.Eskridge (1988), 38 Ohio St.3d 56:
 FORCE OF PARENT OR OTHER AUTHORITY FIGURE. When the relationship between the victim and the defendant is one of child and (parent) (describe other authority figure), the element of force need not be openly displayed or physically brutal. It can be (subtle) (slight) and (psychological) (emotionally powerful). If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear or (duress) (intimidation), the element of force has been proved. 4 O.J.I. 507.02.
In Eskridge, the court stated in paragraph one of its syllabus:
 The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (State v. Labus [1921], 102 Ohio St. 26, 38-39, * * *.)
Further, the court stated at p. 59:
. . . In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome.
See, also, State v. Riffle (1996), 110 Ohio App.3d 554, where the court found force when the mother's live-in boyfriend ordered the victim to take her clothes off and get in bed.
Regarding plain error in connection with jury instructions, the court stated in State v. Long (1978), 53 Ohio St.2d 91 at paragraph 2 of its syllabus:
 A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.
Moreover in State V. Cooperrider (1983), 4 Ohio St.3d 226, the court stated that the plain error rule is to be applied with the utmost caution and involved only under exceptional circumstances in order to prevent a manifest miscarriage of justice. See, also, Long.
Clearly in this instance, Dyson used his special role as Jackson's boyfriend to get to Alecia; he waited till Jackson had either gone to work or gotten drunk to intimidate Alecia into his bedroom. As the lessee of the Euclid apartment in which she and her mother resided, and by driving her to and from school in Cleveland every day, Dyson used his position to exert additional influence over Alecia. He further used his apartment as a tool to keep Alecia silent about the bedroom occurrences and overcome her will to resist by causing her to believe that she and her mother would have no place to live if she resisted or if she told anyone about his actions. Dyson's relationship with Alecia made him an authority figure to her which enabled him to threaten her in this subtle, psychological fashion. This evidence leads us to conclude that no manifest miscarriage of justice occurred in this case. We are not convinced that by letting this verdict stand, there will be a substantial adverse impact on the integrity of and the public confidence in judicial proceedings. Our decision today is, we believe, in conformity with State v. Dye (1998), 82 Ohio St.3d 323, where the court stated in its syllabus:
 A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.
Regarding the related claim of ineffective assistance of counsel for acquiescing in the jury instruction, the test is stated in paragraph two of the syllabus in State v. Bradley
(1989), 42 Ohio St.3d 136:
 Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976]. 48 Ohio St.2d 391, * * *; Strickland v. Washington [1984], 466 U.S. 668, * * * followed.)
Here, then, Dyson must establish not only that his trial counsel's performance fell below an objective standard of reasonable representation, but also that a reasonable probability exists that but for counsel's deficient performance, the outcome of the trial would have been different.
We begin by examining the charge provided to the jury in this case. In its definition of force, the trial court read from the Ohio Jury Instructions, section 507.02 regarding force used by an authority figure. The evidence presented in the case concerning the relationship between Dyson and Alecia established that she called him "Daddy", that her own father had died, that she had seen him beat her mother, that he had "whooped" her on other occasions, that he provided the Euclid apartment where she lived, and that he drove her to and from school in Cleveland for five years, beginning in the second grade. This evidence compels a conclusion that Dyson became an authority figure in her life. Accordingly, we cannot conclude that counsel's performance fell below an objective standard of reasonableness in assenting to a jury instruction based on evidence presented in the case.
Therefore, we have concluded these assignments of error are not well taken.
III.
 APPELLANT'S CONVICTION FOR DISSEMINATING MATTER HARMFUL TO MINORS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE WHERE THE ELEMENT OF OBSCENITY WAS NOT SUFFICIENTLY PROVEN BECAUSE THE JURY WAS NOT GIVEN THE OPPORTUNITY TO VIEW THE ALLEGEDLY OBSCENE MATERIALS AS A WHOLE.
Dyson argues that his convictions for disseminating material harmful to juveniles in violation of R.C. 2907.31 are not supported by sufficient evidence because, he claims, they do not comport with the tripartite test for obscenity as defined by the court in Miller V. California (1973), 413 U.S. 15. The state considers the evidence presented at trial to be sufficient to not only support Dyson's convictions, but also to satisfy all three prongs of the Miller test. Here then, we concern ourselves with the sufficiency of the evidence as it relates to Dyson's convictions for disseminating material harmful to a juvenile.
The state had the burden to prove that Dyson, with knowledge of its character or content, recklessly exhibited or presented to a juvenile under 13 years of age materials or performances which were obscene to juveniles.
The test for sufficiency of the evidence presents a legal issue to the court for resolution prior to having the jury consider the evidence relating to the offense. In State v. Martin (1983),20 Ohio App.3d 172, 175, the court considered the evidence and set forth the test as follows:
 * * * the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. Jackson v. Virginia, 443 U.S. 307, 319. (Citations omitted.)
Thus in applying this test, the evidence and all inferences should be viewed in a light most favorable to the prosecution to determine whether all the essential elements of the crime could be found beyond a reasonable doubt.
Furthermore, Crim.R. 29 states in relevant part that, "the court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
In Miller, the court established the following test to determine whether a performance is obscene: whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest; whether the work depicts in a patently offensive way, sexual conduct; and whether taken as a whole, it lacks serious literary artistic, political or social value.
At trial, Alecia testified that Dyson showed her X-rated videotapes of females performing fellatio, males ejaculating in females mouths, and various acts of intercourse; she also testified as to the names of these videotapes including "Black Holes, White Holes, Black Poles and John something." Detective Grida testified that he confiscated videotapes entitled, "Black Poles in White Holes," and "John Holmes, The Man, The Legend", that he had viewed all the tapes, and that they contained very brief, if any, dialogue and very limited scenes depicting anything other than explicit sexual activity.
During its case in chief, the state played portions of some of the tapes for the jury, and during final argument, the prosecutrix indicated that a television/VCR would be available for members of the jury during deliberation if they needed it.
Although the court granted the defense motion for acquittal in part, four counts of disseminating material harmful to a juvenile remained, and the jury determined Dyson's guilt from the evidence presented. From our review, we have concluded that the average person applying contemporary community standards would find the videotapes, taken as a whole, do appeal to the prurient interests; that they depict sexual conduct in a patently offensive way, and that taken as a whole, they lack serious literary artistic, political or social value.
Finally, we note that counsel never renewed his Crim.R. 29 motion after the close of all of the evidence. Hence, this matter has not properly been preserved for appellate review.
For all of the foregoing reasons, we have determined that this assignment of error is not well taken and that Dyson's convictions are supported by sufficient evidence. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and ANNE L. KILBANE, J., CONCUR
 ___________________________________ PRESIDING JUDGE TERRENCE O'DONNELL