OPINION
Defendant-appellant, Joshua Leggett, appeals his conviction for aggravated robbery in the Warren County Court of Common Pleas. The judgment of the trial court is affirmed.
Around 10:24 p.m., on May 24, 2000, appellant, age nineteen, and his cousin, Michael Jenkins, age seventeen, parked the stolen Ford Taurus they were driving at Smyth's Automotive on Route 73 in Springboro, Ohio. They walked across a vacant lot to an adjacent BP convenience store, where they hoped to purchase some beer. As they approached the BP store, appellant observed Jenkins adjust a .380 automatic handgun in his waistband. Jenkins testified that appellant had given him the gun earlier after checking it by removing the bullets, and then replacing them. Appellant asked Jenkins if he was going to "do anything stupid." Jenkins responded that he wasn't, and the two entered the store.
Outside the store, Steve Holland, the store clerk, was locking the public restroom as he prepared to close the store. Holland was also carrying a handgun. Jenkins motioned for Holland to enter the store. Holland did so, and observed Jenkins pick up a bottle of iced tea, and place it on the counter next to the cash register. As Holland rang up the sale, Jenkins drew his gun, and told Holland that "this [is] a holdup." Holland, nearly simultaneously, drew his gun, and fired four shots. The first shot struck Jenkins in the arm, while the other three missed hitting appellant and Jenkins. Jenkins dropped his gun and fled the store, and appellant followed closely. The two met up in Smyth's parking lot and sped away. Jenkins insisted that he be taken to a hospital to get treatment for the gunshot wound.
Appellant dropped Jenkins off at a hospital, then picked up Jenkins' girlfriend and dropped her off at the hospital as well. Appellant then went to his grandmother's home in Dayton. He stayed there for an hour or two before leaving for Tennessee to stay with his father. He drove to a Hardee's, where he parked the stolen car, and then hitched a ride with a truck driver. Once in Tennessee, he eventually turned himself in to the local police.
Appellant was indicted on one count of aggravated robbery with a firearm specification. After a jury trial, appellant was convicted and sentenced accordingly. He appeals, raising two assignments of error. In his first assignment of error, appellant contends that he was denied the effective assistance of counsel.
The United States Supreme Court has established a two-prong test process for evaluating an allegation of ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. Id. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, the result of which is reliable. Id. Furthermore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." The defendant must overcome the presumption that, "under the circumstances, the challenged action might be considered sound trial strategy."
Appellant first argues that he was denied the effective assistance of counsel because his attorney failed to move for a mistrial until after the jury returned its verdict.
Before trial began, appellant's counsel emerged from the judge's chambers, spoke softly with appellant at the defendant's table, and then returned to the judge's chambers. This occurred several times prior to the start of the trial while the prospective jurors were seated in the courtroom. Although there is no indication that the juror's could overhear the actual conversation that transpired, one juror stated upon questioning that he believed that appellant was attempting to obtain a plea bargain. Upon further questioning, the juror conceded that an innocent defendant may seek a plea bargain in order to avoid the possibility of receiving a greater sentence. The trial court admonished the jury that they were to consider only the evidence which was presented during the course of the trial, and each juror agreed that his or her decision would not be influenced by what they observed prior to trial. At the end of the trial, appellant's counsel moved for a mistrial based on this incident.
We cannot find that appellant was prejudiced by trial counsel's failure to move for a mistrial earlier. Such a tactical decision was well within the range of competent assistance. See State v. Riffle (1996),110 Ohio App.3d 554, 558. As well, the trial court considered the merits of appellant's motion, and denied it. There is no indication that the motion would have been granted had it been made earlier in the proceeding.
Appellant next contends that his counsel was deficient because he did not direct Jenkins' questions and answers, but instead allowed him to testify in a narrative manner. Appellant contends that because the questions were not directed, the jury was able to hear damaging testimony unrelated to the crime. Specifically, Jenkins testified that the Ford Taurus they were driving was stolen, that appellant knew he was carrying a gun, and that he had given the police two false versions of the evening's events.
The manner and style of questioning a witness, as well as what questions will be asked a witness, are trial tactics and do not amount to ineffective assistance of counsel. The reasonableness of such tactics should be assessed at the time they are made. State v. Wilkins (1980),64 Ohio St.2d 382, 390. While hindsight may suggest that an alternative method of questioning would have proved more productive, this court will not second-guess defense counsel's tactics. See Strickland,466 U.S. at 689, 104 S.Ct. at 2065.
The alleged deficient actions of defense counsel in the present case are matters of trial strategy left to the discretion of the trial counsel. Consequently, the first assignment of error is overruled.
In his second assignment of error, appellant contends that his conviction is against the manifest weight of the evidence. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; In reGood (1997), 118 Ohio App.3d 371.
Upon review of the record, we find that appellant's aggravated robbery conviction is supported by the weight of the evidence. Although appellant testified that he was not aware of Jenkins' plans to rob the store, the jury, which was in the best position to judge the credibility of witnesses and the weight to be given the evidence, chose to disbelieve this testimony. There was testimony that appellant and Jenkins argued about whether they were going to rob the store and that appellant checked the handgun and handed it to Jenkins before entering the store. Holland testified that, once in the store, appellant positioned himself near the cash register where there was no merchandise for sale. Holland also testified that appellant fled with Jenkins when the robbery attempt failed.
Reviewing the record and weighing the evidence and the reasonable inferences, we cannot find that the jury clearly lost its way, creating such a manifest miscarriage of justice that the convictions must be reversed. The second assignment of error is overruled.
VALEN, P.J., and KERNS, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.