OPINION
Lester T. Morris, Jr. was found guilty by a jury in the Montgomery County Court of Common Pleas of rape, attempted rape, and corrupting another with drugs, and he was sentenced accordingly. Morris appeals from his conviction.
According to the state's witnesses, the events that led to Morris's conviction were as follows.
Twin sisters Telisha and Sabrina Morris went to live with Morris, who was their natural father, in October 1997. The girls' parents had divorced when they were very young, and the girls had previously lived with their mother, Lou Ellen Newport. Newport had had trouble controlling the girls, however, and the girls admitted that while living with their mother they had regularly "partied" with their older brother and his friends, using alcohol and drugs and having sex with them. The loud parties had caused problems with several landlords, and in October 1997, Newport again faced the prospect of being evicted from her apartment. Newport asked her landlord if she could stay in her apartment if the two girls went to live with their father, and the landlord agreed. Thus, Telisha and Sabrina went to live in an apartment with Morris. At that time, they were fourteen years old.
According to the girls, Morris was much stricter with them than their mother had been. For example, they were not allowed to be out after dark or to have friends in the apartment when Morris was not home. As a result, the girls got into much less trouble while living with their father. Morris did provide the girls with marijuana, however, because he smoked it and because he "wasn't expecting [them] to stop smoking marijuana cold turkey." He also introduced them to huffing glue as a means of getting high.
On Sunday, January 11, 1998, at Morris's suggestion, he and the girls huffed glue together out of a brown bag in his bedroom. Morris provided the glue, which he apparently used in connection with his painting and remodeling business. Morris and the girls huffed in his bedroom because he feared that the neighbors would smell the fumes in the hallway if they huffed in the main living area of the apartment. Each of the girls passed out repeatedly and at some point Morris took off his clothes. Despite the girls' requests that he put on his clothes, Morris refused, and he then asked Sabrina to "suck his dick." Sabrina got angry and went to bed as a result of this statement. When she went to bed, Morris was naked and Telisha was not. Telisha later woke up to find that she had been undressed and that her father was on top of her with his penis in her vagina. When Telisha questioned Morris about what was going on, he told her that they had had sex. Telisha took her clothes and left the room. Sabrina, who had gotten out of bed when she heard a noise, saw Morris on top of Telisha on his bed having sex with her.
The following Tuesday, January 13, Morris picked the girls up from school. Telisha went to bed early that night and did not engage in any huffing. Sabrina stayed up with her father, huffed glue, and passed out. At some point, Telisha woke up and went toward the kitchen. When she approached the living room, she saw Morris on top of Sabrina on the couch. Sabrina was wearing a shirt but no pants, and Telisha was unsure whether Sabrina was awake. Sabrina woke up when Telisha asked what was going on.
The girls did not go to school on Wednesday, January 14. Instead, they went to a food pantry and to Planned Parenthood with their father. The girls obtained physical examinations and birth control at Planned Parenthood, but the appointments were apparently unrelated to the incidents of the previous days, and the girls did not report the sexual activity with their father to the Planned Parenthood staff. When the three returned home, Morris and Telisha began huffing again, but Telisha stopped because she "remembered what had happened" the last time. Sabrina did not huff on that occasion. The girls asked Morris if they could leave the house to play billiards and a fight ensued about whether the girls should first clean their room and about their general uncleanliness around the apartment. According to Telisha and Sabrina, during this argument Morris threatened to hit them, to kill them, to make them stay in their room, and to shoot them with a stun gun. When Morris left the house to buy cigarettes, the girls decided to run away. They packed some bags and then walked to the BP station at Woodman and Burkhardt where they used a pay phone to call their mother, an aunt, and some friends. Because the girls were unable to reach their mother or their aunt, one of their friends encouraged them to call the police, and they did so. When a police officer arrived, the girls told him that Morris "had taken advantage" of them.
On January 22, 1998, Morris was indicted for raping Telisha and for attempting to rape Sabrina in violation of R.C.2907.02(A)(1)(a) and for corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a). Specifically, the rape and attempted rape charges alleged that Morris had engaged or attempted to engage in sexual contact with the girls when, for the purpose of preventing resistance, he had substantially impaired their judgment or control by administering a drug or intoxicant,i.e., the glue, surreptitiously or by force, threat of force, or deception. The drug offense related to providing the girls with marijuana. Morris was tried by a jury in the Montgomery County Court of Common Pleas on March 30 through April 2, 1998. At the close of the state's case, Morris made a Crim.R. 29(A) motion to dismiss on the basis that the state had failed to present evidence that he had administered a drug or intoxicant surreptitiously or by force, threat of force, or by deception. The trial court overruled the motion, and the defense rested without calling any witnesses. The jury found Morris guilty on each count contained in the indictment. The trial court sentenced Morris to ten years of imprisonment for rape, six years for attempted rape, and eighteen months for corrupting another with drugs, to be served consecutively.
Morris raises four assignments of error on appeal.
 I. THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR A DIRECTED VERDICT AND DETERMINING THAT MR. MORRIS WAS A SEXUAL PREDATOR.
Morris argues that his Crim.R. 29(A) motion for a judgment of acquittal should have been granted because the state's evidence was insufficient to support his convictions for rape and attempted rape. Morris asserts that the state presented no evidence that he had administered a drug or intoxicant, the glue, by force or threat of force. The state did not allege that Morris had administered the intoxicant surreptitiously or by deception.
Crim.R. 29(A) states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
The purpose of a Crim.R. 29(A) motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. State v. Price
(1990), 69 Ohio App.3d 243, 244. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. State v.Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins, supra, at 386, citing State v.Robinson (1955), 162 Ohio St. 486.
The state's evidence that Morris had compelled Telisha and Sabrina to huff glue by force or threat of force was very weak. Neither girl specifically testified that she had been forced or had felt compelled to huff the glue with Morris. In fact, the girls readily admitted that they had been high before as a result of using other substances and that they had liked getting high. Telisha's version of the events of Sunday, January 11 leading up to the time that she passed out was as follows:
 A: * * * My dad brought home this bucket of glue. He had been telling us about it. And we huffed it.
 Q: When you say huff, tell these ladies and gentleman what you mean.
 A: In a brown paper bag, like with a cloth in it. He would — my dad put glue, the glue into the bags and you put it around your mouth and you just breathe in the bag.
Q: Whose idea was it to huff the glue?
A: My father's.
Q: Who provided the glue?
A: My father.
 Q: Who set it up with the cloth in the bags like you described?
A: My dad.
This testimony demonstrates only that Morris suggested huffing the glue and provided the materials to do so. Thus, there was no evidence that the girls were "forced" to huff glue within the ordinary and statutory meaning of the word force. See R.C.2901.01(A)(1).
The state argues, however, that force was proven under the broader interpretation of the term "force" that was endorsed by the supreme court in State v. Eskridge (1988), 38 Ohio St.3d 56, for cases involving sexual offenses against children. InEskridge, a case that involved the rape of a four year old girl, the court observed:
 The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength.
Id. at 58, citing State v. Labus (1921), 102 Ohio St. 26, 38-39. The state contends that, with this relative view of force in mind, the evidence showed that Morris had used subtle or psychological force to compel the girls to huff glue. The trial court adopted this view in overruling Morris's Crim.R. 29(A) motion to dismiss, concluding that there had been "certainly an indirect threat, if not a direct threat" compelling Telisha and Sabrina to huff the glue with Morris. Specifically, the trial court reflected on the evidence as follows:
 The evidence is clear that the girls came to be in their father's custody not by choice. There were no other options. There was testimony from the girls that at least at times their father made them feel like they were in jail. There's also testimony from the girls that they had knowledge that their father had a stun gun. It's also testimony that he allegedly threatened to use it.
The trial court relied on Eskridge, supra, without elaboration.
At trial, Telisha and Sabrina did not testify to any specific conflicts with their father prior to the times that he engaged in sexual conduct with them. They merely stated that Morris had numerous rules by which he required them to abide, especially when he was not at home, and that they would have preferred to live with their mother if given a choice. Telisha qualified her statement, saying that she would have preferred to live with her mother "if [she] didn't get in trouble there," but she recognized that she did get into too much trouble at her mother's house. Telisha also stated that she and Sabrina "got along real well" with their father "most of the time." Neither girl testified that she had been fearful of Morris or had felt threatened or intimidated by him in any way prior to the sexual conduct. In regard to the huffing in particular, neither girl's version indicated that Morris had pressured her into trying the glue. Further, each girl testified that she had refused to huff with Morris on at least one occasion. There was no evidence presented that, on these occasions, Morris had cajoled, teased, threatened, or otherwise attempted to persuade the girls to participate or to wear down their resistance.
The girls did testify that they had been involved in a heated exchange with Morris on Wednesday, January 14, one day after his sexual conduct with Sabrina and three days after his sexual conduct with Telisha. The girls' testimony clearly indicated, however, that this argument related to the cleanliness of their room and of the apartment, not to the huffing or the sexual conduct. Cleanliness had apparently been an ongoing point of contention, as Telisha testified that Morris "was like so Mr. Tidy, we didn't like it. Everything just had to be so clean all the time." The argument erupted because the girls had tried to leave the apartment to play billiards without realizing that Morris had expected them to clean their room first. As a result of this argument, during which both Morris and Telisha were yelling and throwing items around the room, Morris forced the girls to stay in their room with the lights off and to stay on the bed "to see what it was like to be in jail." He also threatened to shoot them with a stun gun if they got off of the bed and to kill them.
As a preliminary matter, we note that we consider the nature of the parent-child relationship in this case to be quite different from the relationships in Eskridge and many other cases that have applied the relative definition of force to cases involving young children. Telisha and Sabrina were obviously quite independent of their parents and had experienced the wilder side of life in ways that many adults have not. They were teenagers who had lived with little supervision for significant periods of time and who obviously had little trouble standing up to their father and fending for themselves at times when their judgments and actions were not impaired by the use of intoxicants. Accordingly, although we are not of the view that it was error for the trial court to consider the Eskridge standard in evaluating the presence of force in this case, the circumstances presented here, including the age, size, and strength of the victims, would not justify a significantly lower standard for establishing the element of force than that required in cases with adult victims.
Even giving the state some latitude in establishing the use of force through intimidation or coercion, we are unable to conclude that the evidence presented by the state and relied upon by the trial court was sufficient to support Morris's convictions for rape and attempted rape. The girls' testimony that they felt like they were in jail related specifically to their father's actions in response to the fight about cleaning their rooms. That fight occurred after Morris had huffed glue with the girls and could not logically have caused them to feel forced into huffing glue at an earlier time. Neither girl testified that Morris had consistently maintained his home as a jail-like environment or that she had ever felt like she was in jail prior to the argument on January 14. Likewise, no evidence was presented that Morris had ever threatened the girls with his stun gun prior to their fight on January 14. Thus, the trial court should have recognized that no reasonable jury could have found, based on these subsequent events, that the girls had huffed glue by force or threat of force on January 11 and 13. Moreover, the simple fact that the girls "came to be in their father's custody not by choice" certainly does not, in itself, support the conclusion that they huffed glue with him by force or threat of force.
Although we abhor Morris's alleged conduct and note that the unrefuted testimony at trial could have supported convictions for other offenses, we are compelled to conclude that the evidence was insufficient to sustain Morris's convictions for rape and attempted rape, as charged pursuant to R.C. 2907.02(A)(1)(a). The state presented insufficient evidence that Morris had administered an intoxicant to the victims surreptitiously or by force, threat of force, or by deception, and thus the jury could not have reasonably found that Morris had committed rape or attempted rape as charged in the indictment. We have little doubt that the jury would have convicted Morris of sexual battery or corruption of a minor if it had been given the opportunity to do so, but the state elected not to give the jury that option by not charging those offenses in the indictment. Faced only with the choice of convicting Morris of rape and attempted rape or acquitting him of the alleged sexual misconduct, the jury convicted him. Although we understand the jury's inclination to resolve the case in this manner, we cannot ignore the fact that Morris's convictions for rape and attempted rape are based upon insufficient evidence. Accordingly, we must reverse Morris's convictions for rape and attempted rape and enter judgments of acquittal on these counts of the indictment. See State v. Goodin (1978), 56 Ohio St.2d 438,442. Because we are acquitting Morris of the sexually oriented offenses upon which the trial court's finding that he was a sexual predator was based, that finding must be vacated as well.
The first assignment of error is sustained.
Because our resolution of the first assignment renders the others moot, we will not address the second, third, and fourth assignments of error. See App.R. 12(A)(1)(c).
The judgment of the trial court will be reversed insofar as it convicted Morris of rape and attempted rape and found him to be a sexual predator. A judgment of acquittal shall be entered on the rape and attempted rape counts, and Morris will be discharged therefrom. Morris's conviction for corrupting another with drugs pursuant to the third count in the indictment will not be affected by this adjudication.
FAIN, J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
Copies mailed to:
Kirsten A. Davies, Gary W. Crim, Hon. Mary E. Donovan