DECISION AND JUDGMENT ENTRY
Edwin Roe appeals his conviction in the Ross County Court of Common Pleas of the offense of complicity to escape, a violation of R.C. 2923.03 (involving a principal offense of R.C. 2921.34.) Roe asserts that his conviction is against the sufficiency and the manifest weight of the evidence. After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of complicity to escape proven beyond a reasonable doubt. Additionally, upon reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we determined that, in resolving conflicts in the evidence, the trier of fact did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, we overrule Roe's assignment of error and affirm the judgment of the trial court.
 I.
On the afternoon of November 15, 1998, Deputy Patricia Beatty and Deputy Polly Ackley, corrections officers in the Ross County Jail, began investigating pounding and scraping noises coming from cell number G-14. The deputies attempted to listen in on cell G-14 through the intercom connecting the cell and the control room, but one of the inmates had clogged the intercom receivers with toothpaste and covered them with styrofoam, so the deputies heard only muffled scraping and pounding. Shortly thereafter, the deputies observed Roe, an inmate assigned to cell G-13, exit cell G-14 and close the door behind him.
Ross County Jail rules prohibit inmates from entering cells other than their own and prohibit inmates from closing cell doors during daytime hours. Because they observed Roe violating these rules, and because they suspected that the muffled noises might indicate the violation of another jail rule, Deputy Ackley went to cell G-14 to investigate. There, she observed that two and a half concrete blocks had been removed from the cell wall, and that inmates William Miller and Ralph Humphrey were attempting to remove additional concrete blocks.
After a lockdown, the deputies identified Roe as one of the inmates potentially involved in removing the blocks from the wall. Ultimately, the Ross County Grand Jury indicted Roe for escape. Roe pled not guilty and the case proceeded to a trial by jury.
Deputy Beatty and Deputy Ackley each testified about the above events at trial. Additionally, inmate Ronald Bapst testified that, on the day before the escape, he observed Roe remove a vent flap from an air vent. Bapst also testified that, on the same day, he observed Roe and Miller remove a shower curtain rod. After they yanked the rod loose, Bapst observed Roe put the rod in his pants and walk toward cell G-14. Finally, Bapst testified that Roe, knowing that Bapst had worked in concrete construction, asked Bapst questions regarding how the concrete walls of the cells were reinforced.
While testifying in his own defense, Roe admitted that he removed the vent flap because it was loose, but stated that he threw it away. Roe also admitted that he used the shower curtain rod as a chin-up bar, but stated that he did not help Miller remove the rod. Roe testified that he "stepped in" to cell G-14 several times and observed Miller and Humphrey for a total of approximately forty seconds as they attempted to escape. However, despite the short amount of time he spent observing Miller and Humphrey, Roe was able to describe the method by which they removed the blocks in detail. Roe stated that Miller and Humphrey used the vent flap to scrape away the mortar between the concrete blocks. They then used the shower curtain rod to pry the blocks loose. Roe also admitted that he shut the door to cell G-14 in order to help prevent others from hearing the noise Miller and Humphrey were making as they removed the blocks. Finally, Roe testified that Bapst and he did not get along well.
The jury found Roe guilty of one count of complicity to escape, a violation of R.C. 2921.34. The trial court entered conviction and sentenced Roe accordingly. Roe timely appealed, asserting the following assignment of error:
 I. The verdict of the jury was against the sufficiency and weight of the evidence.
 II.
Although Roe presented only one assignment of error, he raises two arguments in that assignment of error: (1) whether the record contains sufficient evidence to support his conviction, and (2) whether the jury's verdict is against the manifest weight of the evidence. We address each of these issues in turn.
 A.
The Ohio Supreme Court clearly outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. Statev. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
R.C. 2921.34 prohibits any person who knows or should know that he is under detention from breaking or attempting to break his detention. Pursuant to R.C. 2923.03(A)(2) in conjunction with R.C. 2921.34(A)(1), a person who aids or abets another in attempting to illegally break his detention is guilty of complicity to escape.
In this case, the evidence presented includes Bapst's testimony that on the day before the attempted escape he observed Roe and Miller work together to remove the shower pipe, he observed Roe conceal the pipe in his pants and take it toward cell G-14, and he observed Roe take the vent flap out of the air vent. Bapst also testified that Roe asked him questions about how the cell wall was constructed and reinforced. The state presented Deputy Beatty and Deputy Ackley's testimony that they observed Roe exit cell G-14, not his own cell, and close the door behind him.
During Roe's testimony in his defense, Roe described the process by which Miller and Humphrey removed the concrete blocks from the wall in detail, though he insisted he only "stepped in" to cell G-14 for a few seconds. Roe admitted that, despite the jail rule against closed cell doors, he closed the door to G-14 behind him to help Miller and Humphrey muffle the noise.
We find that this evidence, when viewed in a light most favorable to the prosecution, constitutes sufficient evidence that Roe committed the offense of complicity in an attempt to escape. Specifically, Roe knew or should have known that Miller and Humphrey were under detention. Roe aided and abetted Miller and Humphrey in their attempt to break that detention by providing them with the shower rod and the vent pipe, by gathering information from a former concrete construction worker, and by closing the door to help Miller and Humphrey muffle the scraping and pounding noises. The fact that no witness observed Roe scraping or pounding the wall is of no consequence; the circumstantial evidence of Roe's involvement in the escape attempt is sufficient to support his conviction.
Accordingly, we find that the record contains sufficient evidence to support Roe's conviction.
 B.
Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v. Martin
(1983), 20 Ohio App.3d 172, 175. The test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214; Martin
at 175.
In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin, 20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Statev. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
In this case, Roe asserts that the jury clearly lost its way because the state's chief witness, Bapst, possessed motives to perjure himself to Roe's detriment. Bapst and Roe both testified that he and Roe nearly came to blows several months before the escape attempt after Roe embarrassed Bapst in front of other prisoners. Bapst stated that he and Roe had since resolved their differences, while Roe contended that Bapst held a grudge against him.
The jury, as the trier of fact in this case, had the opportunity to view both Bapst and Roe, hear their voices, and witness their demeanor. Thus, the jury was in the best position to assess the each witness' truthfulness. Additionally, the deputies' testimony about Roe leaving cell G-14 and Roe's admission that he removed the vent flap corroborate Bapst's testimony that Roe was involved in Miller and Humphrey's escape attempt.
Based upon this evidence, we find that the jury did not clearly lose its way or create a miscarriage of justice. Accordingly, we find that Roe's conviction is not against the manifest weight of the evidence.
 III.
In conclusion, we find that the record contains sufficient evidence that Roe committed the offense of complicity in an attempt to escape, and that Roe's conviction is not against the manifest weight of the evidence. Accordingly, we overrule Roe's assignment of error and affirm the judgment of the trial court.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A Certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
EVANS, J. and HARSHA, J.: Concur in Judgment and Opinion.