JOURNAL ENTRY and OPINION
The appellant herein, Karim Kelley, appeals from the verdict of the trial court subsequent to a bench trial, finding him guilty of one count of aggravated robbery pursuant to R.C. 2911.01 and one count of felonious assault in violation of R.C. 2903.11. For the reasons adduced below, we affirm the verdict of the trial court.
On October 25, 1999, the victim, Robert Alexander, was brutally attacked while attempting to purchase a rock of crack cocaine on East 86th Street in Cleveland. According to the state's principal witness, Antonio Steele, the appellant attacked the victim after the victim attempted to pull away in his car without paying for the crack cocaine which he had received from the appellant. In addition to other serious injuries, the victim now has amnesia as a result of the assault and has no memory of anything prior to the date of the attack, including his childhood, his wife and his child. The chances of the victim recovering all or a portion of his lost memory are purportedly very slim.
For his part, the appellant denied at trial that he had anything to do with the assault or that he was even present in the vicinity of the attack on the night in question. The appellant has repeatedly sought to implicate Steele, who was fifteen years old and approximately 120 pounds at the time of the attack, suggesting that Steele's testimony was manufactured to divert suspicion from himself.
The appellant was indicted on December 27, 1999 on one count of aggravated robbery and one count of felonious assault. After the appellant waived his right to a jury, a bench trial commenced on May 1, 2000. At the close of the trial, the trial court judge found the appellant guilty on both counts, but finding that the two offenses were allied offenses of similar import, merged the two counts for sentencing and only sentenced the appellant on count one — the aggravated robbery count. The appellant was then sentenced to a term of imprisonment of six years on count one.
The appellant herein appeals from the verdict of the trial court and assigns for this court's review the following singular assignment of error:
 I. THE VERDICTS (SIC) ARE AGAINST THE WEIGHT OF THE EVIDENCE.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
The trial court in the instant case was faced with the task of evaluating the credibility of two witnesses who provided starkly different testimony on almost all of the underlying facts. On the day following the beating, the appellant and Antonio Steele were each arrested after bailing out of a car driven by Steele. The car that the two were driving belonged to the victim and had been stolen subsequent to the assault. The appellant claimed that he had merely requested a ride to the junkyard from Steele so that he could buy some parts for his car and that he had no idea that the car was either stolen or that it belonged to the victim. The appellant tried to explain as to why he attempted to flee from the police by stating that he ran because he knew that there was a warrant out for his arrest for leaving a half-way house where he was residing as a condition of probation and/or other probation violations. Steele on the other hand stated that he was driving the stolen car at the time the two were pulled over because the appellant threatened to beat him in the same way that he had beaten the victim if Steele did not agree to drive him. The appellant also offered the testimony of his girlfriend/mother of his child who testified that the appellant was with her on the evening of the assault.
Steele's testimony at trial differed in some significant respects from the statement that he initially gave to the police. The most glaring inconsistency was Steele's testimony on the issue of whether the appellant spent the night at Steele's home after the assault or whether he slept elsewhere and then arrived the following morning in the stolen car and ordered Steele to drive him home. Yet, Steele admitted at trial that his prior statement was inaccurate. The trial judge conducted an extensive voir dire of Steele to determine whether he was telling the truth at trial. The trial court called Steele's attention to the inconsistencies and asked him to explain why he had changed select portions of his story. The trial court also called Steele's father, John Steele, as the court's own witness to help it resolve questions as to Steele's credibility. The elder Steele's testimony directly contradicted the appellant's on several points concerning events on the morning of the day in which Steele and the appellant were apprehended. For example, the appellant testified that he had arranged to borrow John Steele's automobile in return for a $10 rental fee, and that he had paid to borrow the car in the past. John Steele flatly denied that he had either agreed to rent out his car to the appellant on the day in question or that he had received remuneration for the use of his car by the appellant in the past.
Antonio Steele testified that he witnessed the appellant dive into the passenger window of the victim's car, pull the victim out of the car and then repeatedly punch and stomp the victim as the victim lay helpless on the street. Steele stated during his testimony that the appellant justified the attack by stating that the victim should not have been playing with my money by attempting to pull away without paying for the rock of crack cocaine which he received from the appellant. An inventory search of the victim's car after it was recovered did in fact turn up one rock of crack cocaine on the front passenger seat.
The verdict in this case was premised on the trial court's determination that the testimony of the appellant was not as credible as that of Antonio and John Steele and the several officers involved in the investigation. The trial court took great pain to clear up any unresolved credibility issues by asking its own questions of Antonio Steele and calling John Steele as the court's witness. The trial court obviously did not believe the self-serving and incredulous testimony of the appellant or the testimony of his girlfriend who exhibited what can most charitably be described as a conveniently selective memory of events on the evening of the assault.
We once again note that "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. Green (2000), 90 Ohio St.3d 352, 357, 738 N.E.2d 1208, 1219, citing State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. An appellate court will not reverse a judgment against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304.
In resolving the conflicts in the evidence, we cannot say the trier of fact clearly lost its way or created a manifest miscarriage of justice. Appellant's first assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ MICHAEL J. CORRIGAN, J.:
TIMOTHY E. McMONAGLE, P.J., CONCURS, ANNE L. KILBANE, J., CONCURS IN JUDGMENT ONLY.