OPINION
Defendant-appellant, Carl Havard, appeals from his conviction in the Butler County Area III Court for violating a protection order. The decision of the trial court is affirmed.
A complaint was filed against appellant on October 26, 2000, which alleged that appellant had violated a protection order, an offense under R.C. 2919.27. Appellant pled not guilty to the charge and the case proceeded to a bench trial.
Appellant's ex-wife, Natalie Havard, testified that during the evening hours of October 25, 2000, appellant followed her to her friend's residence on Dimmick Road in West Chester. Natalie testified that appellant drove by in his girlfriend's sport-utility vehicle ("SUV"). Natalie testified that appellant drove by with the window down, honked the horn, and waved. Natalie and her eleven-year-old son, Tyler Havard, immediately entered her friend's residence. Appellant drove by the home again, braking as he approached, as if he intended to turn into the driveway. However, appellant continued driving past the residence, and then returned again. According to Natalie, appellant drove by the residence, honking the horn and waving, four times. Tyler also testified that appellant had driven by four times that day. Natalie testified on direct examination that the incident occurred at about 7:00 p.m., but on cross-examination testified that appellant drove by the Dimmick Road residence at about 5:45 p.m.
Officer Ron Hatcher of the West Chester Police Department testified that he took a report from Natalie that night and appellant was charged with violating a civil protection order the next day. Officer Hatcher explained that after appellant was arrested, he originally told Officer Hatcher that he had driven by the residence on Dimmick Road once but had not honked the horn or waved. Then appellant changed his story and stated that he had not driven by at all because his girlfriend had the SUV at the time.
Brian Minter, appellant's next-door neighbor, testified that he offered to cut appellant's grass at about 3:00 p.m. that day. Minter testified that he worked for about ninety minutes, and then appellant said that he would finish the job. Minter testified that appellant told him that his girlfriend was at work. Minter did not see the SUV or appellant's gray truck in appellant's garage that day. On cross-examination, Minter admitted that he went home after he finished his part of the yard work, but insisted that he could hear the engine of appellant's lawn mower running for a couple of hours after he left.
Darrell Martin, a mechanic, testified that appellant did not have access to his gray truck that day because it was being held for repairs. Appellant's girlfriend, Sharon Martin, testified that she has lived with appellant since March 2000. Sharon testified that she drove her SUV to work on the day in question. Sharon testified that she left work at about 7:00 p.m. that night. Sharon explained that the commute between her place of work and home is thirty-five to forty-five minutes.
Appellant also testified. He denied following Natalie and insisted that he did not drive by the residence on Dimmick Road on the day in question. Appellant testified that he did not have access to his truck or his girlfriend's SUV on the evening of October 25 and that he worked on his yard that day. Appellant testified that he believed his son had been coached by Natalie before testifying against him. When asked why he failed to tell the police officer about his alibi when he was arrested the following day, appellant testified, "I can't see any reason why I would have. You know, I just, just [was] basically blabbering because I couldn't believe I was being arrested for something I didn't do."
At the conclusion of the bench trial, the trial court found appellant guilty of violating a protective order. Appellant filed this appeal.
Assignment of Error No. 1:
 THE COURT ERRED IN CONVICTING THE DEFENDANT OF VIOLATING A CIVIL PROTECTION ORDER WHEN A SUBSEQUENT DIVORCE FAILED TO INCORPORATE THE TERMS OF THE CIVIL PROTECTION ORDER IN THE BODY OF THE DIVORCE AND INCLUDED TERMS AND CONDITIONS DIFFERENT FROM THOSE IN THE RESTRAINING ORDER.
In his first assignment of error, appellant argues that the trial court erred by convicting him of violating a civil protection order where a subsequent divorce decree failed to incorporate such order and included some terms and conditions that differed from those contained in the civil protection order.
On November 8, 1999, a magistrate issued a civil protection order against appellant for the protection of Natalie, Tyler, and Rebecca Havard. The first condition of this order states, "RESPONDENT SHALL NOTABUSE the family or household member(s) named in this Order by harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting, or forcing sexual relations upon them." (Emphasis sic.) The civil protection order further states, "ALL OF THE TERMS OF THIS ORDER SHALL REMAIN IN FULL FORCE AND EFFECT FOR2 YEARS from the date of filing this Order unless earlier modified, vacated, or extended by order of this Court." (Emphasis sic.)[1]
Appellant argues that the November 8, 1999, civil protection order was modified by the issuance of a divorce decree between the parties in February 2000. Appellant maintains that the civil protection order, which was issued by the domestic relations court in case number DV 00-01-0014, was superceded by the issuance of a divorce decree between the parties in case number DR99-08-1103. In support of his argument, appellant cites this court's decision in Petrak v. Petrak (Feb. 22, 1994), Butler App. No. CA93-04-075, unreported.
In Petrak, a temporary civil protection order was originally issued exparte on September 23, 1992. Petrak at 2. After a hearing was held, the parties entered into a journalized Agreed Entry on November 16, 1992, which specifically provided that "[t]he temporary protection order previously issued in this Court on September 23, 1992 shall continue in this matter until further Order of Court, and until the divorce action under Case No. DR92-09-1744 is final." Id. On December 30, 1992, the trial court, upon its own motion, reviewed and further clarified the protection order issued on September 23, 1992. Id. A divorce decree was entered on January 27, 1993, and this decree released all prior restraining orders. Id. On April 27, 1993, the trial court in Petrak
found the appellant in contempt of court for violating the December 30 order based upon conduct that occurred after the parties' divorce. Id. at 3.
On appeal, this court reversed the contempt finding of the trial court, stating that:
 [A]lthough the temporary protection order upon which the contempt finding was based and the divorce decree are part of two separate and distinct cases, the language of the Agreed Entry clearly indicates the parties' intent that the domestic violence case and the temporary protection orders issued thereunder shall continue only until the final decree of divorce is entered in the parties' separate divorce action. Therefore, pursuant to the Agreed Entry, the temporary protection order in Case NO. DV92-09-0429 terminated when the divorce decree in Case No. DR92-09-1744 was entered on January 27, 1993.
Petrak at 5.
Moreover, this court noted that absent the Agreed Entry, the "merger doctrine" would not apply because the protection orders were contained in two distinct cases. This court explained:
 Normally, orders from each respective case apply only to that case and a divorce decree entered in one case would have no effect on the validity of a temporary protection order issued in a separate case, regardless of whether the divorce decree expressly released all prior restraining orders. This is because the merger doctrine, which provides that all prior temporary orders entered in a divorce case are merged and extinguished into the final divorce decree, applies only to orders within a single case and not to orders in separate cases. See Rahm v. Rahm (1974), 39 Ohio App.2d 74, 79.
 We reach our result in this case, however, based upon the language of the parties' Agreed Entry in the domestic violence case, which expressly provided that the temporary protection order issued in that case was to continue only until the divorce decree was entered in the divorce action.
Petrak at 5, fn. 1.
In the case sub judice, there is no agreed entry indicating that the civil protection order issued against appellant on November 8, 1999, was to be terminated at the time that a divorce decree between the parties was issued. In the absence of such an agreed entry, and where the decree itself does not explicitly abrogate the prior protection order, we find that the issuance of a decree of divorce between the parties did not terminate the November 8, 1999, civil protection order. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE COURT ERRED IN CONVICTING DEFENDANT AS DEFENDANT'S CONVICTION WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the second assignment of error, appellant insists his conviction is against the manifest weight of the evidence. We disagree.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, 59. The standard for reversal based upon the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was found guilty of violating R.C. 2919.27, which states in pertinent part: "(A) No person shall recklessly violate the terms of any of the following: (1) A protection order issued * * * pursuant to section2919.26 or 3113.31 of the Revised Code." The civil protection order issued against appellant on November 8, 1999 was issued under R.C. 3113.31.
Reviewing the record and weighing the evidence and the reasonable inferences, we find that the trial court could reasonably conclude from substantial evidence that the state proved beyond a reasonable doubt that appellant violated the civil protection order. There was evidence that appellant followed his ex-wife and their son to the Dimmick Road residence and drove by four times, honking the horn of his vehicle and waving. Appellant's actions violated the terms of the civil protection order which prohibited, among other things, "following, * * * bothering, harassing, [and] annoying." Therefore, we find that the conviction is supported by the manifest weight of the evidence. The second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Appellant asserts that the fourth condition of this civil protection order, which prohibits appellant from being within a two-block radius of the family members referenced in the order, was not a valid condition under R.C. 3113.31. However, R.C. 3113.31(E)(1)(h) provides that a court may "[g]rant other relief that the court considers equitable and fair * * *." Moreover, the civil protection order granted temporary visitation rights to appellant to see his children, Tyler and Rebecca. Therefore, the two block radius prohibition should not be interpreted to prohibit appellant from making any contact with his children; a reasonable interpretation of the civil protection order is that appellant is to refrain from contact with his children except for supervised visitation.