JOURNAL ENTRY and OPINION
{¶ 1} Appellant Diane Conner appeals her conviction and sentence. She assigns the following error for our review:
 {¶ 2} "I. The trial court erred when it found the appellant guilty of all counts when the weight of the evidence did not support such a verdict."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 4} On August 20, 2002, Aldean Fischer called Home Depot to report that her credit card company had notified her someone had used her credit card for a major purchase at the store. Fischer stated she had never been in the store and did not authorize anyone to use her card. Home Depot loss prevention manager Patrick Hardy investigated the matter and found a phone order made out to Aldean Fischer that was placed by a female. The order was scheduled for delivery the next day to an address in the City of Euclid. Hardy notified the Euclid Police Department which arranged for a narcotics officer to be passenger in the Home Depot delivery truck as part of a staged delivery.
 {¶ 5} When they arrived at the address, a man came to the door, told them he was not aware of the delivery, and did not know Aldean Fischer. They returned to Home Depot with the merchandise and approximately five minutes later, a man who identified himself as Mr. Fischer called to say he was running late, but was now at the house. Patrick Hardy informed him they had attempted delivery, but the person who answered the door was not aware of a delivery. The caller claimed the person who answered the door lived upstairs and was unaware of the delivery.
 {¶ 6} Thereafter, Home Depot notified the Euclid Police Department and three detectives went to the address. When they arrived, they saw two males who were later identified as Frederick Brewer and James Wiggins sitting on the front porch. While the officers were obtaining identification, they noticed a piece of paper on the porch adjacent to where Brewer and Wiggins had been sitting. The paper contained the list of items that had been ordered from Home Depot. Additionally, when the officers ran Wiggins' social security number they discovered he had an outstanding warrant. Upon searching Wiggins, they found two pieces of paper. One contained a list of bar code (SKU) numbers to the items ordered from Home Depot, and the other contained Aldean Fischer's name, social security number, address, credit card account number, expiration date and amount of credit available. The word "Dian" was written on the back of the paper. Consequently, the officers arrested both men for credit card fraud.
 {¶ 7} After his arrest, Brewer gave a written statement implicating each person involved, including appellant Diane Conner. The Cuyahoga County Grand Jury indicted Conner for receiving stolen property, theft, and taking the identity of another. Conner pled not guilty and the matter proceeded to trial.
 {¶ 8} At the bench trial that ensued, Fred Harvey, a financial fraud investigator at Key Bank, testified that Taling Rutledge, a Key Bank employee, admitted she had been selling credit card numbers she got off the bank's computer.
 {¶ 9} Brewer testified he dated and lived with Conner for approximately six months. According to Brewer, Conner told him about her friend Taling Rutledge, who worked for Key Bank and had access to credit card numbers. Conner arranged for Brewer and Wiggins to buy credit card numbers from Rutledge for $50 each. After obtaining the credit card numbers, Brewer and Wiggins would go to Home Depot, select items, write down the bar code numbers, and give them to Conner. She would then call Home Depot pretending to be the card holder and place the order. Brewer stated in August 2002, Conner pretended to be Aldean Fischer and placed an order to Home Depot for thousands of dollars worth of merchandise. When Conner placed the call to Home Depot, she left the telephone number of a Marvin Fischer as the call back number. Brewer stated he and Wiggins intended to sell the items once they were delivered and had rented a U-Haul truck to transport the items.
 {¶ 10} Brewer also testified Conner bought credit card numbers from Rutledge and used them to pay rent and other bills. Finally, Brewer admitted he had been convicted and served time in prison three or four times before. He also admitted the charges for his involvement were reduced to misdemeanors in exchange for his truthful testimony against the other parties.
 {¶ 11} Detective Susan Schmid of the Euclid Police Department testified she met with Brewer as part of the investigation, and he implicated Conner as the female who placed the telephone order to Home Depot. This prompted Schmid to subpoena Conner's cell phone number. The records indicated the majority of the calls were to Marvin Fischer, Taling Rutledge, and Conner's home. Schmid also subpoenaed Marvin Fischer's cell phone records. He had told Schmid that on several occasions he had allowed Brewer to use his cell phone to call Conner. Fischer's sister, Angela Fischer, told Schmid she had allowed Conner to use her cell phone to purchase merchandise. Schmid subpoenaed her cell phone records and found several calls made to Home Depot prior to the scheduled delivery. Schmid also spoke with Rutledge as part of the investigation. Rutledge indicated she met Brewer through Conner, but did not implicate her. However, Rutledge did indicate Brewer had been bothering her for more credit card numbers, and she asked Conner to get him to stop.
 {¶ 12} At the close of trial, the court found Conner guilty on all counts and sentenced her to two years of probation, pay restitution to maintain full-time employment, and provide 50 hours of community work service. Conner now appeals.
 {¶ 13} In her sole assigned error, Conner argues her conviction was against the manifest weight of the evidence. We disagree.
 {¶ 14} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[1] The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[2]
 {¶ 15} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt.[3]
 {¶ 16} In the instant case, it is undisputed Conner introduced Brewer to Rutledge, who thereafter sold him the credit card numbers used to facilitate the crimes. Rutledge admitted to selling the credit card numbers to Brewer. She even admitted to enlisting Conner's help to stop Brewer from badgering her for more credit card numbers. Home depot verified the telephone order was placed by a female. Angela Fischer stated on several occasions she allowed Conner to use her cell phone to make telephone purchases. Angela Fischer's cell phone records revealed calls made to Home Depot that corresponded to the time the order was placed. Finally, Brewer detailed Conner's involvement in the entire scheme.
 {¶ 17} Based on the above, we conclude there was substantial, credible evidence to determine Conner's guilt; therefore, we cannot say the fact finder lost its way and created a manifest miscarriage of justice. Consequently, we overrule Conner's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and McMonagle, J., Concur.
[1] State v. Martin (1983), 20 Ohio App.3d 172,175, citingTibbs v. Florida (1982), 457 U.S. 31, 38, 42. See, also, Statev. Thompkins, supra.
[2] Martin, citing Tibbs. See, also, State v. Thompkins,
supra.
[3] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.