JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Latonya Goggins appeals her conviction for theft. Goggins assigns the following error for our review: "I. The conviction of appellant is against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Goggins' conviction. The apposite facts follow.
 {¶ 3} On October 21, 2005, the Cuyahoga County Grand Jury indicted Goggins on one count of theft of a motor vehicle. Goggins pled not guilty at her arraignment and subsequently waived her right to a jury trial. On January 17, 2006, a bench trial ensued.
 Bench Trial {¶ 4} At trial, Lamar Dabney, testified that on September 13, 2005, Goggins telephoned him and indicated that she was locked out of her mother's house. Dabney stated that he drove to the east side of Cleveland, picked up Goggins, and brought her back to his apartment.
 {¶ 5} Dabney testified that after he returned with Goggins to his apartment, he began watching television and fell asleep around 3:30 a.m. on the living room couch. Dabney stated that when he awoke, he indicated to Goggins that he had to get his daughter later that morning, but he would be willing drop off Goggins wherever she needed to go. *Page 4 
 {¶ 6} Dabney testified that he fell back to sleep, and when he finally awoke, he realized that Goggins had left. Dabney also discovered that the key to his car was missing. When he looked through the back window of his apartment, he further discovered that his car was missing.
 {¶ 7} Dabney testified that after he notified the police, he went to Goggins' mother's house, but Goggins was not there. However, Dabney learned that he might be able to find Goggins at a nearby homeless shelter.
 {¶ 8} Dabney testified that about two to three days later, he saw Goggins sitting in the car in front of a homeless shelter. Dabney stated that he quickly went to the police station, which was located about one block away, to report the whereabouts of Goggins and his car. The police proceeded to the location, but as they approached, Googins drove off and pulled down a side street and eluded them.
 {¶ 9} Dabney testified that a few moments later, while he was standing in a crowd near the shelter, he saw Goggins and an unidentified man approach the shelter on foot. Dabney stated that he stepped out from the crowd and confronted Goggins. Dabney testified about the ensuing events as follows: "A. I saw she was on foot, and when she saw me, she told the guy she was with, said, `ha ha, that's the guy's car keys that I stole.'"
 "* * *
 "Q. All right. What did you do?
 A. So I stepped out and said to her, I said, hey, where is my car? *Page 5 
 Q. All right. Did you say it like that?
 A. At first I said, hey, Tonya, where is my car? And she said, get the blah, blah, da, da out my face. I don't even know what you talking about. So this guy was with her. He cause himself to walk close to me. So I said to her again, I said, hey where's my damn car? And she says, get the — and she told the guy let's go. So this guy's like walking behind me. She is in front of me. That's when I got on the telephone, and I called the police department.
 Q. What happened next?
 A. Excuse me. Then she said, get the F out of my face."[1]
 {¶ 10} Dabney testified that he followed Goggins and the unidentified man until the police arrived. Finally, Dabney testified that his car was recovered approximately seven to ten days later, but was declared totaled by the insurance company.
 {¶ 11} Goggins took the stand in her own defense. Goggins' testimony differed significantly from the foregoing. Goggins testified that on September 13, 2005, at about 7:00 a.m., she asked Dabney if she could borrow his car to go to an appointment at the Welfare Department, and Dabney agreed.
 {¶ 12} Goggins testified that after she left the Welfare Department, she proceeded to the shelter. Goggins stated that as she was stopped at the traffic light, almost in front of the police station, a man jumped in front of the car and ordered her out of the car at gunpoint. Goggins stated that the man jumped in the car and drove off. Goggins stated that she walked back to the Welfare Department, telephoned Dabney, and told him that his car was stolen. *Page 6 
 {¶ 13} When Goggins was asked on cross examination why she did not report to the police that she was robbed at gunpoint, the following exchange took place: "A. Because it wasn't my car. I didn't feel it was my responsibility. Like I said, I didn't have no license and insurance, so I didn't have no business driving anyway.
 Q. Oh. So you didn't report this armed robbery to the police?
 A. No.
 Q. Did anybody else see it?
 A. I don't know.
 Q. Did anybody ask you, when you got out of the car, geez, lady, you just had a horrible thing happen to you?
 A. No."[2]
 {¶ 14} At the conclusion of the trial, the trial court found Goggins guilty as charged. On February 16, 2006, the trial court sentenced her to 18 months of community-control sanctions, which included 129 days of work release, and 150 hours of community work service.
 Manifest Weight {¶ 15} In her sole assigned error, Goggins argues that her conviction is against the manifest weight of the evidence. We disagree.
 {¶ 16} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the *Page 7 
evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[3] The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[4]
 {¶ 17} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt.[5]
 {¶ 18} In the instant case, Goggins insists that the jury should have accepted her testimony that Dabney gave her permission to use the car. When conflicting testimony is presented at trial, a conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution's testimony.[6] Further, credibility of witnesses is primarily to be determined by the fact finder who actually saw and heard the testimony first hand.[7]
 {¶ 19} Here, Dabney explained why he would not have given permission to Goggins to drive his car. The following exchange took place at trial: *Page 8 
 "Q. All right. And had she asked to use your car on the following morning, would you have let her have driven off with it?
 A. No, sir.
 Q. All right.
 A. I know, I'm an RTA driver and everything that's in transportation goes back to my report for Bureau of Motor Vehicle[s]. And furthermore, it's a lot things that I do in transportation, and I would not take to jeopardize, and not a lot things she doesn't know prior to.
 Q. Now, you're a driver for RTA?
 A. Yes. I'm an RTA driver. I'm a limousine — I mean, a casino driver. I take people all over the country.
 Q. So your driver's license means a lot to you?
 A. Oh yeah. I take it serious * * *."[8]
 {¶ 20} After reviewing the record before us, including Dabney's reason why he would not have given Goggins permission to use his car, we conclude that the fact finder was not patently wrong in choosing to believe Dabney and reject Goggins' testimony. Consequently, we cannot conclude that the fact finder clearly lost its way; therefore, we will not disturb the verdict based on the manifest weight of the evidence. Accordingly, we overrule Goggins' sole assigned error.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 9 
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Tr. at 28-30.
[2] Tr. at 77-78.
[3] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[4] Martin, citing Tibbs. See, also, State v. Thomkins (1997),78 Ohio St.3d 380.
[5] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
[6] State v. Beesler, 11th Dist. No. 2002-A-0011, 2003-Ohio-2814, at]}12.
[7] State v. Lawson (Aug. 22, 1997), 2th Dist. No. 16288. See, also,State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[8] Tr. at 22-23. *Page 1