[Cite as *State v. Marlowe*, 2010-Ohio-4193.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-14 |
| | ) | |
| PERRY MARLOWE, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 08CR852

JUDGMENT:    Affirmed

APPEARANCES:
For Plaintiff-Appellee                     Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant                  Attorney Rhys B. Cartwright-Jones
100 Federal plaza East, Suite 101
Youngstown, Ohio 44503-1810

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 1, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Perry Marlowe, appeals from a Mahoning County Common Pleas Court judgment convicting him of felonious assault following a bench trial.

{¶2} During the weekend of July 11, 2008, appellant was having a barbeque with his girlfriend Lavonne Workman. At the time, Workman resided at appellant's apartment with him. Workman left to go to the store. When she returned an argument ensued between the two. Workman believed appellant was upset because she took too long at the store. Appellant contended Workman's drug use prompted the fight.

{¶3} According to Workman, during the argument, appellant punched her in the left eye. According to appellant, Workman kicked him in the leg causing him to fall and take her down with him when she hit her eye on the corner of the couch. It is undisputed that Workman suffered a broken orbital bone.

{¶4} Workman sought medical attention two days later. She claimed that appellant had prevented her from leaving his apartment by barricading the door.

{¶5} A Mahoning County grand jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1)(D), and one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(3)(C).

{¶6} Appellant waived his right to a jury trial and the case proceeded to a bench trial. The trial court found appellant guilty of felonious assault and not guilty of kidnapping. The court later sentenced appellant to three years in prison.

{¶7} Appellant filed a timely notice of appeal on January 23, 2009.

{¶8} Appellant initially raised two assignments of error. However, he later filed a motion to withdraw his first assignment of error, which this court granted in a January 13, 2010 judgment entry. Thus, only one assignment of error remains. It states:

{¶9} "THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED ACQUITTAL."

{¶10} Appellant argues that the only evidence supporting his conviction came

from Workman, who just vaguely recalled being hit but did not recall the full circumstances surrounding her injury. On the other hand, appellant states that he was able to specifically recall the circumstances surrounding Workman's injury.

**{¶11}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997)*,* 78 Ohio St.3d 380, 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

**{¶12}** Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

**{¶13}** A reviewing court sits as a "thirteenth juror" and determines whether, considering all the evidence, the State met its burden of persuasion and the conclusion reached by the trier of facts is supported by the inclination of the greater amount of the evidence. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶25, citing *Thompkins,* 78 Ohio St.3d at 387. The appellate court's discretion to grant a new trial should only be exercised in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, at 387.

**{¶14}** Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides in relevant part that no person shall knowingly cause serious physical harm to another.

**{¶15}** We must consider all of the evidence presented at trial to determine whether appellant's conviction was supported by the manifest weight of the evidence.

{¶16} The state presented three witnesses.

{¶17} Workman testified first. She testified that sometime during the July 11 weekend, she was not sure of the exact date, she and appellant were having a barbeque at appellant's apartment. (Tr. 13, 17). She stated that she left to go to the store and when she returned, appellant complained that she took too long. (Tr. 15). Workman testified that they began to argue. (Tr. 15). She stated that appellant then grabbed her and she tried to shake him away. (Tr. 15). Workman stated that appellant then swung his arm back and punched her in the eye with his closed fist. (Tr. 14-15). She demonstrated for the court exactly how appellant grabbed her, swung his arm, and hit her. (Tr. 14).

{¶18} As a result of being punched, Workman stated that she was "in a daze" and in a lot of pain. (Tr. 16). Workman testified that her eye was swollen shut to the point where she could not open it. (Tr. 20). She stated that things were "kind of fuzzy." (Tr. 16). She testified that she tried to leave the apartment but appellant moved furniture in front of the door to keep her from leaving. (Tr. 17). Once she was able to leave appellant's apartment, two days later, Workman walked to a nearby Rural-Metro Ambulance facility. (Tr. 18). Workman was then transported to St. Elizabeth Hospital. (Tr. 21).

{¶19} On cross examination, Workman testified that she could not remember everything surrounding the incident. (Tr. 37). She stated that she did not remember how she got to the bathroom to wash the blood off of her face and she did not remember if she passed out. (Tr. 37-38). In fact, she testified that after the hit, her memory was "cloudy." (Tr. 37). She stated that her cloudy, confused memory occurred after appellant struck her. (Tr. 37).

{¶20} Dr. Victor McKee was the physician who treated Workman at St. Elizabeth's. Dr. McKee testified that Workman had suffered a blowout fracture of her left orbit, or eye socket. (Tr. 65-66). He stated that it was a serious injury. (Tr. 65). Dr. McKee also testified that Workman had told him that she was assaulted. (Tr. 66). Finally, Dr. McKee testified that, in his experience as an emergency physician, he

believed Workman's injury was caused by a punch. (Tr. 67). When asked if Workman's injury could have been caused by an accident, Dr. McKee stated that it was only a slim possibility. (Tr. 67-68).

{¶21} Charles Hudak was one of the paramedics working at Rural-Metro when Workman arrived there. Hudak testified that Workman's left eye was swollen shut and she could not see out of that eye. (Tr. 71).

{¶22} Appellant also presented three witnesses.

{¶23} Appellant's first witness was Lisa Robinson, the manager of his apartment building. Robinson stated that on July 12, she saw appellant around 8:00 p.m. barbequing in the stairwell. (Tr. 81). She told him he was not permitted to have a grill so close to the building and then she left for the store. (Tr. 81). When Robinson returned an hour later she still smelled smoke, so she went looking for appellant. (Tr. 81-82). She ran into Workman, who told her appellant was likely at their friend Ruby's apartment. (Tr. 82). Robinson then went to Ruby's apartment with Workman where she found appellant and his grill. (Tr. 82). She told appellant to get rid of the grill. (Tr. 82). At this time, Robinson did not observe any injuries to Workman. (Tr. 83).

{¶24} Appellant's second witness, Maxine Wright, was his neighbor in the apartment building. Wright testified that sometime during the July 11 weekend, she was talking to appellant in his doorway when Workman came out, showed Wright her eye, and told Wright that appellant hit her. (Tr. 88). Wright stated that they laughed about it and Wright called it a "lover's spat." (Tr. 88). She stated that Workman's eye appeared to be injured. (Tr. 94). Wright further testified that Workman and appellant came to her apartment later that evening and Workman did not say anything further about her eye. (Tr. 90).

{¶25} Finally, appellant took the stand in his defense. Appellant testified that on the day in question, he and Workman were outside when Workman left with another man, who he referred to as a "crack head." (Tr. 98). He stated that the two were gone for two hours. (Tr. 98). Because Workman had the only key to his

apartment, appellant testified that he went to Ruby's apartment to wait for Workman to return. (Tr. 98). Appellant stated that when Workman returned it was evident to him that she had been smoking crack. (Tr. 99-100). He further stated that he noticed "shooters" on his table, which are used to put crack in, and threw them out of his window. (Tr. 101). Appellant testified that this was what instigated the argument between him and Workman. (Tr. 101).

{¶26} Next, appellant stated that Workman asked him why he threw the shooters out of the window and then she kicked him in the leg. (Tr. 101). Appellant stated that he has two bad knees and needs knee replacement surgery, which causes him to have poor balance. (Tr. 106-107). As a result, appellant testified that he fell, and as he fell he grabbed Workman who in turn fell onto the corner of the couch. (Tr. 101-102). Appellant stated that this was how Workman injured her eye. (Tr. 102). He stated that Workman's injury was an accident and he did not mean to hurt her. (Tr. 102).

{¶27} Appellant stated that two days later, Workman left the apartment stating that she was going to the hospital. (Tr. 105). He testified that he never prevented Workman from leaving or barricaded her in the apartment. (Tr. 106).

{¶28} A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59. Based on the above testimony, the trial court could reasonably conclude that the state proved appellant was guilty of felonious assault beyond a reasonable doubt.

{¶29} While Workman admitted that her memory was a bit "fuzzy," she testified that she remembered appellant punching her. She even specifically recalled how he swung his arm and that his fist was closed. The fact that Workman could not recall all of the details after being punched, such as how she got to the bathroom or what day the incident occurred, went to her credibility. It is especially noteworthy that Workman remembered the details of what occurred before her injury.

The details she could not remember were of the events after her injury. The trial court was able to take these things into consideration when determining if Workman's testimony was truthful.

{¶30} Furthermore, at least two other witnesses helped to corroborate Workman's story. Dr. McKee stated that in his experience as an emergency physician, an injury like Workman's is most likely a result of being punched. And Wright testified that when she talked with Workman and appellant the weekend of the incident, she observed the injury to Workman's eye, Workman told her that appellant hit her, and Wright coined it a lover's spat.

{¶31} Despite the fact that appellant testified Workman's injury was an accident, the greater amount of credible evidence supports the trial court's finding of guilt. The trial court was in the best position to weigh appellant's testimony against Workman's testimony and make a credibility determination. Thus, appellant's conviction is not against the manifest weight of the evidence.

{¶32} Accordingly, appellant's assignment of error is without merit.

{¶33} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.