[Cite as *State v. G.H.*, 2019-Ohio-1576.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

G. H.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0076**

---

Criminal Appeal from the
Youngstown Municipal Court of Mahoning County, Ohio
Case Nos. 16 CRB 01676Y, 16 CRB 01677Y

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Dana Lantz*, City Prosecutor, City of Youngstown Law Department, 26 South
Phelps Street, Youngstown, Ohio 44503, for Plaintiff-Appellee (No Brief Filed), and

*Atty. Brian Smith*, Brian A. Smith Law Firm, LLC, 755 White Pond Drive, Suite 403,
Akron, Ohio 44320, for Defendant-Appellant.

Dated:
April 26, 2019

_____

**Donofrio, J.**

{¶1}    Defendant-appellant, G.H., appeals his conviction and sentence in the Youngstown Municipal Court on two counts of violating a protection order, first-degree misdemeanors, and one count of criminal damaging, a second-degree misdemeanor, following a bench trial.

{¶2}    J.V. and J.P. knew appellant because they were neighbors with appellant's grandmother and friends of hers. At some point in time, J.V. was granted a protection order against appellant. The protection order extended to all of J.V.'s household members. J.V. had three household members: his fiancé J.P. and their two children.

{¶3}    While the protection order was in effect, J.P. went outside of her house one night in order to dispose of a cigarette. J.P. saw appellant sitting in a car outside of the house at the end of the driveway. J.P. saw appellant throw a rock through one of the windows in the house. J.P. recognized appellant because the car's interior light was on. The rock appellant threw broke the window.

{¶4}    On a different day, while the protection order was in effect, J.V. was playing with his two children in his front yard.  J.V. observed appellant in the passenger seat of a car driving to appellant's grandmother's house, which was approximately 50 feet away. When appellant arrived at his grandmother's home, J.V. heard appellant yell "I'm gonna shoot the house up." J.V. believed this threat was directed towards him.

{¶5}    Appellant was charged with two counts of violating a protection order in violation of R.C. 2919.27(A)(2) and one count of criminal damaging in violation of R.C. 2909.06(A)(1). On the day of trial, appellant pled guilty to all counts. But during the plea colloquy, appellant asserted his innocence multiple times. The trial court then vacated appellant's guilty plea and held a bench trial.

{¶6}    J.P. and J.V. were the only two witnesses who testified at trial. At the conclusion of the trial, the trial court found appellant guilty on all counts. Prior to sentencing, J.P. told the trial court that she did not "want [appellant] to get in trouble." J.V. informed the trial court that appellant "can be an all-right guy when he wants to be." J.P. also said that appellant "really is a good kid."

{¶7}     The trial court sentenced appellant to 90 days in jail, three years of probation, a $150 fine, and $598 in restitution for the damaged window. Appellant's trial, conviction, and sentencing were all part of the same hearing. Appellant's conviction and sentence were memorialized in a judgment entry dated March 16, 2017. Appellant filed a motion for a delayed appeal on April 25, 2017, which this court granted. Appellant now raises two assignments of error.

{¶8}     Appellant's first assignment of error states:

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}     Appellant argues that the lack of evidence surrounding his criminal damaging conviction, inconsistencies in J.P.'s testimony, and the conditions surrounding the witnesses' identification of him render his convictions as against the manifest weight of the evidence.

{¶10}     In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶11}     *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a

reasonable doubt. *State v. Hill*, 7th Dist. No. 09–MA–202, 2011–Ohio–6217, ¶ 49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

{¶12}   Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04–BE–53, 2005–Ohio–6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99–CA–149, 2002–Ohio–1152.

{¶13}   First, appellant argues that his criminal damaging conviction is against the manifest weight of the evidence because there was no testimony regarding the monetary damage done to the window. The only reference to the cost to fix the window was a repair estimate disclosed by plaintiff-appellee, the State of Ohio.  This estimate showed that the cost to repair the window was $598. (Tr. 39). While this document was discussed at sentencing, it was not admitted at trial.

{¶14}   This argument lacks merit. Pursuant to R.C. 2909.06(A), criminal damaging does not have a monetary amount requirement. The greater amount of credible evidence produced at trial indicates that appellant broke the window by throwing a rock at it. Appellant was inside of a car at the end of the driveway when he threw the rock at the window. (Tr. 18). J.P. testified that appellant threw a rock at the window and the window broke. (Tr. 17-18). A picture of the broken window was admitted into evidence without objection. (Tr. 19, 32). J.P. recognized appellant because the car's interior light was on. (Tr. 22).

{¶15}   Next, appellant argues that J.P. and J.V. were not credible witnesses. Regarding J.P.'s testimony, appellant points out inconsistencies in her testimony. First, J.P. testified that she was outside to dispose of a cigarette when appellant threw the rock

at her window. (Tr. 17). J.P. later testified that her two-year old child just walked out of the room when the rock went through the window. (Tr. 19). Second, J.P. testified that appellant threw a rock "at" her window. (Tr. 17-18). J.P. later testified that appellant threw a rock "through" her window. (Tr. 17-18).

**{¶16}** Regarding J.V.'s testimony, J.V. testified that appellant made threats towards him while appellant was at his grandmother's house across the street. (Tr. 25-26). Specifically, J.V. recalls hearing appellant shout "I'm gonna shoot the house up," out of the window of a car. (Tr. 26). J.V. was about 50 feet away from appellant when the threat was shouted. (Tr. 27). J.V. also admitted that he has a hearing problem. (Tr. 30).

**{¶17}** Appellant argues J.P. could not have been outside to see appellant throw a rock and see her child walking out of the room when the rock was thrown. As for J.V., appellant argues that J.V.'s hearing problem coupled with the fact that appellant was 50 feet away when he was yelling makes the testimony not credible.

**{¶18}** The trier of fact is in the best position to determine credibility of the witnesses and the weight due the evidence. *Rouse* at ¶ 49. While J.V. admitted to having a hearing problem, there was no elaboration as to what kind of hearing problem he has. Moreover, J.V. testified that he could "hear it plain as day what was being said." (Tr. 30).

**{¶19}** As for J.P., her testimony was not inconsistent. J.P testified that she only opened up the door to dispose of a cigarette when she saw appellant. (Tr. 22). There was also no indication on the exact amount of time between when J.P.'s child left the room and appellant threw the rock. Regarding J.P.'s use of "at" and "through," there is no inherent inconsistency with the use of those two words in this case. Even if there were, the trial court would be in the best position to resolve the inconsistency by determining J.P.'s credibility.

**{¶20}** Based on the above, appellant's convictions are not against the manifest weight of the evidence.

**{¶21}** Accordingly, appellant's first assignment of error lacks merit and is overruled.

**{¶22}** Appellant's second assignment of error states:

> THE TRIAL COURT'S SENTENCE OF APPELLANT WAS AN ABUSE OF DISCRETION.

Case No. 17 MA 0076

**{¶23}** Appellant argues that the trial court abused its discretion in sentencing him because J.P. and J.V. made statements in his favor during sentencing. J.P. told the trial court "I don't want [appellant] to get in trouble." (Tr. 36). J.P. and J.V. were no longer having problems with appellant. (Tr. 37). J.P. told the trial court that appellant "really is a good kid." (Tr. 37). J.P. also said she just wanted the window fixed. (Tr. 37).

**{¶24}** The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. *Id.*

**{¶25}** A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B).

**{¶26}** In rendering a misdemeanor sentence, the trial court must consider the factors set out in R.C. 2929.22(B)(1). The factors include the nature and circumstances of the offense; the offender's criminal record; whether there is a substantial risk the offender is a danger to others; whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; likelihood of recidivism; any emotional, mental, or physical injuries traceable to military service that contributed to the offense; and the offender's military service record. R.C. 2929.22(B)(1)(a)–(g).

**{¶27}** While the better practice is for the trial court to state on the record that it considered the statutory factors, R.C. 2929.22(B) does not require the court to do so. *Id.* at ¶ 37, citing *State v. Lundberg*, 2d Dist. No. 2278, 2009–Ohio–1641, ¶ 21. Thus, when the trial court's sentence is within the statutory limit, an appellate court is to presume that the trial court followed the standards and considered the factors in R.C. 2929.22 absent a showing to the contrary. *Id.*, citing *State v. Bodnar*, 7th Dist. No. 12–MA–77, 2013–Ohio–1115, ¶ 20.

**{¶28}** An appellate court reviews a misdemeanor sentence for abuse of discretion. *State v. Tribble*, 7th Dist. No. 16 MA 0009, 2017–Ohio–4425, ¶ 24; R.C. 2929.22. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶29}** Appellant was convicted of two first-degree misdemeanors and one second-degree misdemeanor. The maximum jail sentence for first-degree misdemeanors is 180 days and the maximum jail sentence for second-degree misdemeanors is 90 days. R.C. 2929.24(A)(1)-(2). The maximum fine for second-degree misdemeanors is $750. R.C. 2929.28(A)(2)(a)(ii). The maximum amount of time an offender may be placed on probation is five years. R.C. 2929.25(A)(2).

**{¶30}** The trial court sentenced appellant to 90 days of incarceration, a $150 fine, and $598 in restitution for the criminal damaging conviction. (Tr. 39-40). The trial court sentenced appellant to three years of probation for the violating a protection order convictions. (Tr. 40). Appellant's sentence was within statutory guidelines. Therefore, we must presume the trial court followed the appropriate standards.

**{¶31}** Appellant's argument does not have merit. Because appellant's sentence was within statutory limits, we presume the trial court followed the appropriate standards, including considering victims' statements. Moreover, the trial court could have sentenced appellant to 180 days in jail but only sentenced appellant to 90 days. After a review of the record, appellant's sentence was not an abuse of discretion.

**{¶32}** Accordingly, appellant's second assignment of error lacks merit and is overruled.

**{¶33}** For the reasons stated above, the trial court's judgment is hereby affirmed.


Robb, J., concurs.

D'Apolito, J., concurs.


Case No. 17 MA 0076

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**